2024-1616, 2024-1650

# United States Court of Appeals
# for the Federal Circuit

SMARTREND MANUFACTURING GROUP (SMG), INC.,

*Plaintiff-Appellee*

v.

OPTI-LUXX INC.,

*Defendant-Appellant.*

Appeals from the United States District Court for the Western District of Michigan in Nos. 1:22-cv-00915-HYJ-RSK, 1:21-cv-01009-HYJ-RSK, Judge Hala Y. Jarbou.

## BRIEF OF PLAINTIFF-APPELLEE SMARTREND

Thomas W. Cunningham
John P. Rondini
Dustin R. Zak
BROOKS KUSHMAN P.C.
150 W. Second St., Suite 400N
Royal Oak, MI 48067-3846
(248) 358-4400

*Counsel for Plaintiff-Appellee*

July 29, 2024

## FEDERAL CIRCUIT RULE 28(a)(12)(B) STATEMENT

Exemplary claim 1 of U.S. Patent No. 11,348,491 contains limitations (emphasized) at issue in this appeal. Claim 1 reads:

1. ***An illuminated school bus sign for direct mounting on a school bus, the sign comprising***:

opaque lettering positioned on or over a front surface of a translucent panel;

an opaque rear panel situated opposite to the translucent panel in spaced relation therefrom to define a space therebetween;

a light source comprising a plurality of LEDs positioned in the space adjacent to the rear panel and pointing towards a front of the sign; and

***frame surrounding a perimeter of the translucent panel and forming a perimeter of the sign for mounting the sign to the school bus***,

wherein the translucent panel is spaced by a spacer from the LEDs thereby creating a gap between the LEDs and the translucent panel,

wherein the spacer surrounds the LEDs and supports a rear surface of the translucent panel along the entire perimeter of the translucent panel, and

wherein the entire perimeter of the translucent panel is sealed in a weather-tight manner by a weather-tight seal between the translucent panel and the spacer.

# CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellee, Smartrend Manufacturing Group (SMG), Inc., certifies the following:

1.     **Represented Entities.** Provide the full names of all entities represented by undersigned counsel in this case. Smartrend Manufacturing Group (SMG), Inc.

2.     **Real Party in Interest.** Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

   None

3.     **Parent Corporations and Stockholders.** Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. None

4.     **Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4)  Robert L. Lee & Emily C. Welch of Alston & Bird.

i

5.     **Related Cases.** Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). *See also* Fed. Cir.R.47.5(b).   None.

6.     **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6). None.

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................... i

TABLE OF AUTHORITIES .................................................................... vi

STATEMENT OF RELATED CASES ...................................................1

COUNTER-STATEMENT OF THE ISSUES ........................................2

COUNTER-STATEMENT OF THE CASE ...........................................3

I.    Overview of the Inventions of the Asserted Patents.......................3

    A.    Prior Art School Bus Signs.....................................................3

    B.    The Smartrend Inventions and Patents...................................5

    C.    The D930 Patent.....................................................................7

    D.    The '491 Patent .......................................................................8

II.   The Accused Products and Opti-Luxx's Copying .........................9

III.  Procedural History ......................................................................11

    A.    D930 Patent Issues ...............................................................11

        1.    Construction of the Term "Transparency" ................11

        2.    Qualifications and Opinions of Smartrend's Expert Mr. Brent York on Opti-Luxx's Design Patent Infringement......... 13

        3.    Opti-Luxx Did Not Timely Challenge Mr. York's Qualifications to Opine on Design Patent Infringement.......... 13

    B.    '491 Patent Issues................................................................16

    C.    Trial and Post-Trial Motions ...............................................17

SUMMARY OF THE ARGUMENT ....................................................19

ARGUMENT ......................................................................................23

I.    In Construing the Term "Transparency" in the D930 Patent, the District Court's Fact Findings Were Not Clearly Erroneous, and its Construction Based on Those Findings Was Correct .........................................23

    A.    Opti-Luxx Fails to Show the District Court's Factual Findings on the Meaning of Transparency to Those Skilled in the Art Are Clearly Erroneous..................................................................23

B.      The District Court's Construction Based on Its Findings
        Conforms with Intrinsic Evidence and Was Correct ...........................26

C.      Opti-Luxx's Attorney Arguments Are Largely New on Appeal,
        Mischaracterize the Record, and Fail to Show Any Error .................28

II.     The District Court Did Not Commit Plain Error nor Otherwise Err in
        Concluding Mr. York Was Qualified to Testify on Design Patent
        Infringement ..............................................................................................31

A.      Since Opti-Luxx Did Not Timely Object to Mr. York's
        Qualifications, the Standard of Review is Plain Error ........................31

B.      The District Court Did Not Commit Plain Error nor Abuse its
        Discretion in Admitting Mr. York's Expert Testimony on Design
        Patent Infringement ................................................................................34

III.    Substantial Evidence Supports the Jury's Verdict that Opti-Luxx Infringed
        the '491 Patent Under the Doctrine of Equivalents ......................................38

A.      Standard of Review ..................................................................................38

B.      Mr. York Offered Substantial Evidence that the Accused
        Products' "Integral" Frame is Equivalent to the Claimed (as
        Construed) "Separate" Frame ..............................................................38

C.      Opti-Luxx's Challenges Fail ..................................................................41

        1.      Opti-Luxx Improperly Relies on Functions Not Required
                by the Claims nor the District Court's Construction ...............41

        2.      Substantial Evidence Supports the Jury Rejecting Opti-
                Luxx's Arguments on the Required Functions ........................43

IV.     This Court Can Affirm Infringement of the '491 Patent on Alternative
        Grounds Because Opti-Luxx Literally Infringed Under the Proper
        Construction of the "Frame" Limitation ........................................................44

A.      Alternative Ground for Affirmance and Standard of Review ............44

B.      The Claims, Specification and Prosecution History Show
        Patentee Did *Not* Disclaim Integral Frames .......................................45

C.      The *Retractable*, *Abbott Diabetes* and *Abbott Labs* Cases, on
        Which the District Court Relied, Show Patentee Did *Not*
        Disclaim Integral Frames ......................................................................47

D.    Under the Correct Construction of "Frame," the Opti-Luxx Products Literally Infringe the Asserted Claims of the '491 Patent ................................................................................50

CONCLUSION AND RELIEF SOUGHT ............................................................52

CERTIFICATE OF COMPLIANCE  WITH TYPE-VOLUME LIMITATIONS

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Sandoz, Inc.*,
  566 F.3d 1282 (Fed. Cir. 2009) ................................................................ 48, 49

*Amini Innovation Corp. v. Anthony California, Inc.*,
  211 Fed. Appx. 938 (Fed. Cir. 2007) ............................................................ 37

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
  No. 11–CV–01846–LHK, 2012 WL 2571332 (N.D. Cal. June 30, 2012) .... 37

*Aristocrat Techs. Australia PTY Ltd. v. Int'l Game Tech.*,
  709 F.3d 1348 (Fed. Cir. 2013) .................................................................... 28

*Braun v. Dep't of Health and Human Serv's*,
  983 F.3d 1295 (Fed. Cir. 2020) .................................................................... 34

*Commun's Test Design, Inc. v. Contec, LLC*,
  952 F.3d 1356 (Fed. Cir. 2020) .................................................................... 34

*Cont'l Circuits LLC v. Intel Corp.*,
  915 F.3d 788 (Fed. Cir. 2019) ...................................................................... 46

*Cordis Corp. v. Bos. Sci. Corp.*,
  561 F.3d 1319 (Fed. Cir. 2009) ................................................................ 40, 41

*Cordis Corp. v. Boston Scientific Corp.*,
  188 Fed. Appx. 984 (Fed. Cir. 2006) ............................................................ 47

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
  559 F.3d 1308 (Fed. Cir. 2009) .................................................................... 43

*Equal Emp't Opportunity Comm'n v. New Breed Logistics*,
  783 F.3d 1057 (6th Cir. 2015) ...................................................................... 38

*First Tenn. Bank Nat'l Ass'n v. Barreto*,
    268 F.3d 319 (6th Cir. 2001) .......................................................................35

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
    527 F.3d 1318 (Fed. Cir. 2008) ..................................................... 29, 30, 36

*In re Abbott Diabetes Care, Inc.*,
    696 F.3d 1142 (Fed. Cir. 2012) .................................................................48

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
    274 F.3d 1371 (Fed. Cir. 2001) .................................................................43

*Kitsch LLC v. Deejayzoo, LLC*,
    No. CV19-02556 JAK, 2023 WL 4291445 (C.D. Cal. May 8, 2023)...........36

*Liebel-Flarsheim v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004) ...................................................................47

*Minks v. Polaris Industries, Inc.*,
    546 F.3d 1364 (Fed. Cir. 2008) .................................................................40

*Morales v. American Honda Motor Co., Inc.*,
    151 F.3d 500 (6th Cir. 1998) .....................................................................35

*Personal Web Tech., LLC v. Apple, Inc.*,
    848 F.3d 987 (Fed. Cir. 2017) ...................................................................23

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .................................................................45

*Poly-Am., L.P. v. API Indus., Inc.*,
    839 F.3d 1131 (Fed. Cir. 2016) .................................................................46

*Retractable Technologies, Inc. v. Becton, Dickinson and Co.*,
    653 F.3d 1296 (Fed. Cir. 2011) .................................................................48

*Rodriguez v. Dep't of Veterans Affairs*,
8 F.4th 1290 (Fed. Cir. 2021)...................................................34

*ScriptPro, LLC v. Innovation Assocs., Inc.*,
762 F.3d 1355 (Fed. Cir. 2014)...................................................47

*SEB S.A. v. Montgomery Ward & Co.*,
594 F.3d 1360 (Fed. Cir. 2010)...................................................37

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015)...................................................31

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002)...................................................47

*Terlep v. Brinkmann Corp.*,
418 F.3d 1379 (Fed. Cir. 2005)...................................................28

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
574 U.S. 324 (2015)................................................ 23, 24, 26, 45

*United States v. Levy*,
904 F.2d 1026 (6th Cir. 1990)...................................................31

*United States v. Nixon*,
694 F.3d 623 (6th Cir. 2012)...................................................35

*United States v. Olano*,
507 U.S. 725 (1993)...................................................32

*United States v. Sypher*,
684 F.3d 622 (6th Cir. 2012)...................................................32

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
520 U.S. 17 (1997)...................................................40

## Other Authorities

*Manual for Patent Examining Procedure*, § 1503.02 ..................................... 12, 25

## Rules

Fed. R. Civ. P 50(b) ..................................................................... 16, 17, 33
Fed. R. Civ. P. 59 ................................................................................. 16
Fed. R. Evid. 103 ................................................................................. 31

## STATEMENT OF RELATED CASES

No other appeal in or from the same civil action in the lower court was previously before this or any other appellate court. Plaintiff-Appellee, as well as its undersigned counsel, are unaware of any other actions that will directly affect or be directly affected by this Court's decision in the pending appeal.

## COUNTER-STATEMENT OF THE ISSUES

1.      Has Opti-Luxx failed to show that the district court (a) clearly erred in its fact findings on the meaning of "transparency" to those skilled in the art when the findings track undisputed expert testimony, or (b) erred in its construction that "transparency" in the D930 Patent includes translucency when that construction conforms with the district court's findings and the intrinsic evidence?

Smartrend answers: *Yes.*

2.      Where Opti-Luxx did not timely object to the qualifications of Smartrend's expert, has Opti-Luxx failed to show that the district court committed plain error in rejecting Opti-Luxx's untimely objections and admitting his testimony on design patent infringement?

Smartrend answers: *Yes.*

3.      Does substantial evidence support the jury's verdict that Opti-Luxx infringed the '491 Patent under the doctrine of equivalents, where Smartrend provided detailed expert testimony that the accused products' integrated frame is interchangeable with a separate frame and meets the function-way-result analysis?

Smartrend answers: *Yes.*

4.      Should this Court, if necessary, correct the district court's erroneous construction of the term "frame" and affirm infringement on alternative grounds?

Smartrend answers: *Yes.*

2

## COUNTER-STATEMENT OF THE CASE

This appeal arises from two infringement suits filed by Smartrend Manufacturing Group (SMG), Inc. ("Smartrend") against Opti-Luxx, Inc. ("Opti-Luxx"). These suits were consolidated for trial. Smartrend alleged infringement of a design patent, U.S. Design Patent No. D932,930 (the "D930 Patent") (Appx5557-5562), and a utility patent, U.S. Patent No. 11,348,491 ("the '491 Patent"). (Appx5563-5611). The patents are directed to direct mount LED bus signs. Opti-Luxx appeals from a judgment (Appx29) following a jury verdict that Opti-Luxx willfully infringes both patents. (Appx1928-1933).

## I.    Overview of the Inventions of the Asserted Patents

This case concerns signs on school bus bulkheads that identify the bus as a "School Bus." The inventions of the asserted patents improve the visibility and durability of these bus signs in all weather conditions, thus making school buses safer for the children riding them.

### A.    Prior Art School Bus Signs

Prior to the inventions of the asserted patents in 2017, these school bus signs were primarily one of three types: (1) a plain sticker stating "School Bus;" (2) a retroreflective sticker stating "School Bus," which became more visible when external light was directed at the sticker; and (3) a back-lit lens with the word

"School Bus" that required large cut-outs in the bulkheads (referred to as "grommet-mount" signs). Appx1524 (ll. 16-22).

The stickers (shown below) had serious drawbacks; they were not visible in dark or harsh weather conditions unless an external light (e.g., automobile headlight) was directed at the sign. Appx1525-1526.




Appx2985.

The back-lit grommet-mount signs (shown below) also had significant drawbacks. Appx1525-1528, Appx1533-1534. Among other things, they required large cut-outs in the bulkheads of the bus, a compartment inside the bus with an access panel to house the lighting components, and a rubber seal (e.g., grommet) to hold a lens that would often leak and allow water into the bus, causing mold and electrical shorts, and disabling lighting. Appx1525-1528; Appx 1534.



Exterior of lens which sits inside or within the rubber window seal

Rubber window seal around perimeter of cut out in bulkhead

Access Panel - Opened



Illuminated by a strip of incandescent bulbs or a strip of LEDS

Interior of lens which sits inside or within the rubber window seal

Appx2986-2988. These signs also lacked uniform light because the light sources were not evenly mounted to illuminate the entire sign. Appx1536 (ll. 14-18.)

## B.    The Smartrend Inventions and Patents

In 2017, Smartrend improved on these prior art bus signs. Appx1524-1529. Smartrend's sign is self-contained, back-lit, bright, uniform, and directly mounts to the bus's bulkhead – thus eliminating the large cut-outs. Appx1527-1528. Smartrend

utilized both back-lighting and retroreflectivity – so if the bus lost power, the sign was still visible when exposed to external light. *Id.* Finally, Smartrend designed unique waterproofing to improve reliability in inclement weather. Appx1528-1529. The figure below compares Smartrend's (a.k.a., First Light) sign (middle) with the back-lit grommet mount sign (top) and retroreflective sticker (bottom).



Appx5635.

Smartrend markets its bus signs to school districts, bus dealers and school bus manufacturers. Appx1551. Its bus signs have enjoyed substantial success in the marketplace. Two of the three major OEM bus manufacturers adopted the sign (Appx1560-1561), and numerous states altered their regulations to require the Smartrend sign on their buses. Appx1545-1546. A study demonstrated the Smartrend sign reduces the number of drivers illegally passing school buses when stopped. Appx1543-1544; Appx5630-5631.

Smartrend obtained several patents on its sign including the asserted patents and the '491 Patent's parent, U.S. Patent Nos. 11,170,673 ("the '673 Patent").

## C.    The D930 Patent

The asserted D930 Patent claims the ornamental design for an "LED Light Panel." Appx5557-5560. Figures 1-6 are shown below. Appx5559-5560.



The D930 Patent states that: "[t]he oblique shading lines visible in the front and perspective views denote transparency." Appx5557. The patent and its prosecution history do not expressly define the meaning of the term transparency. See generally, Appx5557-5560. As shown in Figures 1 and 2 above, the lens is of a nature that one cannot see the internal components of the sign below the lens. *Id.*

### D.    The '491 Patent

Smartrend asserted claims 1-3, 5-7 and 9 of the '491 Patent (Appx1730), but only one limitation of claim 1 is at issue on appeal. The relevant portions of independent claim 1 are reproduced below:

> 1. An illuminated school bus sign for direct mounting on a school bus, the sign comprising:

> \* \* \*

> frame surrounding a perimeter of the translucent panel and forming a perimeter of the sign for mounting the sign to the school bus,

> \* \* \*

>> wherein the entire perimeter of the translucent panel is sealed in a weather-tight manner by a weather-tight seal between the translucent panel and the spacer.

Appx5610-5611 (22:52 - 23:6). In the Notice of Allowance, the Examiner identified the patentable feature as a weather-tight seal that was created between the spacer and the translucent panel. Appx3919; Appx3987.

The parent application for the '491 Patent application issued as the '673 Patent. Appx3828-3876. Though not asserted at trial, the '673 Patent informs the

proper construction of the "frame" limitation of the '491 Patent, because the '673 Patent expressly claims a "separate" frame that is "removabl[e]" from a "self-contained illuminated sign," as shown below:

> 1. A system for supporting a self-contained illuminated sign on a vehicle, the system comprising:
>
> ***a self-contained illuminated sign***, the sign being configured as a weather-sealed, single unit containing:
>
> \* \* \*
>
> ***a separate mounting frame mountable*** on a vehicle for supporting the sign on the vehicle, ***the mounting frame having a space for removably receiving the sealed sign as a single unit*** and being configured to surround at least a portion of perimeter of the sign while permitting visibility of the front display area, when the sign is received in the space.

Appx3875 (22:49-64) (emphasis added.)

## II.    The Accused Products and Opti-Luxx's Copying

Opti-Luxx's predecessor, SoundOff (Appx1957), twice approached Smartrend's CEO, Mr. Kevin Smith, at industry trade shows and examined a yet-to-be-released Smartrend sign in a detailed manner that made Mr. Smith uncomfortable. Appx1563 (ll. 5-20). Mr. Smith informed Opti-Luxx that Smartrend had sought patent protection on the designs. *Id*. (ll. 18-20).

Opti-Luxx's technical manager then researched and obtained the Smartrend utility publication for the parent application to the '491 Patent and began making

Opti-Luxx's first direct mount, back-lit sign. Appx1990-1991, Appx1984 (ll. 05-10).

Opti-Luxx's original sign, released in 2022, is depicted below:



Appx529. A technical drawing with an exploded and bottom views of the original

sign is shown below:





Appx532. As shown above, the frame and rear panel (10) are integrally molded together.

After the third major OEM bus manufacturer BlueBird, "flushed" its plans to purchase from Smartrend to instead purchase a new less expensive sign from Opti-Luxx, Smartrend filed suit. Appx1570 (ll. 8-14); Appx1575 (ll. 16-20).

During the lawsuit and after its initial design had manufacturing issues, Opti-Luxx further copied Smartrend by adding retroreflectivity to the LED back-lit lens (Appx1991-1992) – which Opti-Luxx testified was the next "evolutionary leap" in back-lit signage. Appx1994-1995.

## III.    Procedural History

### A.    D930 Patent Issues

#### 1.    Construction of the Term "Transparency"

In district court, the parties disputed the meaning of the term "transparency" in the D930 Patent. Describing the D930 Patent's figures, the patent states, "[t]he oblique shading lines visible in the front and perspective views denote

*transparency*." Appx5557 (emphasis added). Opti-Luxx asserted this language limited the D930 patent to LED panels with a completely transparent lens and asserted because "[t]he Opti-Luxx sign has a translucent lens, [it] cannot infringe the D930 Patent" as a matter of law. Appx2262-2265. Opti-Luxx offered "no evidence for its definition of transparency." Appx50.

Smartrend asserted that "transparency," in the illuminated signage industry, means that light is allowed to pass through – i.e., that transparent is interchangeable with translucent. Appx365. Smartrend relied on extrinsic evidence from its expert Mr. Brent York (Appx508; Appx523-529), the inventor Kevin Smith (Appx425; Appx429-431), and the *Manual for Patent Examining Procedure* ("MPEP"), § 1503.02(II). Appx365-366. Smartrend also asserted that the figures of the D930 Patent supported its position that "transparency" includes translucent because "none of the internal features of the sign such as LEDs or the interior of the housing are depicted." Appx527-528.

After "[w]eighing the evidence," the district court adopted Smartrend's construction. Appx50-51. After Opti-Luxx ignored the district court's construction in its opening statement at trial (Appx1498), the district court again considered the issue and, "again denie[d] Opti-Luxx's motion to construct that claim specifically as it relates to the word transparency to mean only transparent." Appx1677 (ll. 8-11).

**2.    Qualifications and Opinions of Smartrend's
Expert Mr. Brent York on Opti-Luxx's Design
Patent Infringement**

In discovery, Smartrend served an expert report of Brent York. Appx508-548.

Mr. York's qualifications included "over 37 years of experience" in illuminated

signage, including for vehicles, which involved product design, development,

testing, manufacturing, marketing, sales and senior management. Appx512-517.

Mr. York opined how those skilled in the art would understand the term

"transparency" in the D930 Patent "to mean *allows light to pass through*" and that

transparent and translucent in the context of light emitting devices can be used

interchangeably. Appx523-529 (emphasis in original).

Mr. York then gave a detailed opinion on Opti-Luxx's design patent

infringement. Appx529-548. Mr. York explained in detail why (1) the designs were

substantially similar and (2) why he believed an ordinary observer would find them

to be substantially similar. *Id*.

**3.    Opti-Luxx Did Not Timely Challenge
Mr. York's Qualifications to Opine on Design
Patent Infringement**

Prior to trial, Opti-Luxx never objected to Mr. York's qualifications to testify

on design patent infringement from the ordinary observer's perspective. Opti-Luxx

did not object to Mr. York's opinions at summary judgment, did not file a *Daubert*

motion (Appx5657-5675), nor raise alleged lack of qualifications in the Final Pre-Trial Order. Appx1289-1317.

At trial, after Mr. York testified to his significant qualifications, Smartrend moved to offer him as an expert in LED lighting and illuminated signage. Appx1682-1698. Opti-Luxx's counsel was then allowed to "*voir dire*" Mr. York, and asked him numerous questions about his qualifications, including those relating to his opinions on infringement of the D930 design patent. Appx1697-1703.

The district court then asked if Opti-Luxx had "***[a]nything else as it relates to his qualifications***?" to which Opti-Luxx's counsel stated: "***No***. I think we're good." Appx1703 (ll. 14-16) (emphasis added). The district court then asked if Opti-Luxx objected to Mr. York's admission as an expert, and Opti-Luxx's counsel responded: "***No. I don't object, Your Honor***."  Appx1703 (ll. 18-20) (emphasis added). Mr. York was admitted as an expert. Appx1703 (ll. 21-22).

After Mr. York began testifying why the Opti-Luxx sign infringes the D930 Patent, Opti-Luxx's counsel objected to Mr. York's qualifications, ***based on the sole assertion*** that Mr. York had not demonstrated that he was an ordinary observer:

> MR. DARNELL: I'm going to object, Your Honor. We had this conversation about the ordinary observer, and **there's been no testimony that this witness is qualified to testify what would, in fact, lead the ordinary observer to be deceived**, *because I don't believe this – there's been any testimony this witness is an ordinary observer*.

14

Appx1727 (ll. 15-20) (emphasis added). The district court overruled the objection, stating: "He was admitted as an expert in LED lighting and illuminated signage, and he's giving his opinion. ***He doesn't have to be the ordinary observer to give the opinion***. So overruled." Appx1728 (ll. 7-10) (emphasis added).

Later, Opti-Luxx's counsel extensively cross-examined Mr. York on his qualifications to opine on behalf of an ordinary observer. Appx1752-1769. Mr. York explained who the ordinary observer was, and the factors and considerations important to them in purchasing illuminated signage products for vehicles. Appx1752-1757.

In its Fed. R. Civ. P. 50(a) motion, Opti-Luxx again objected to Mr. York's ***qualifications***. Appx1900-1901. The district court explained that Opti-Luxx's attack on Mr. York's qualifications was untimely.

> THE COURT: Excuse me. Does this go to his qualifications? Because I've already qualified him as an expert.

> \* \* \*

> MR. CARRIER: We are attacking his qualifications.

> THE COURT: Well, the time to do that was at the time before he was qualified. He's already been qualified as an expert.

Appx1901 (ll. 12-25). The district court denied the Rule 50(a) motion. Appx1923-24.

15

Opti-Luxx again objected to Mr. York's qualifications in a Fed. R. Civ. P. 50(b) motion.[1] Appx2271-2272. The district court denied the motion on two separate grounds: (1) that "York 'doesn't have to be the ordinary observer to give [his] opinion'" and (2) its challenges were untimely because "if OLI wished to challenge York's qualifications to testify as to certain aspects of the legal test, ***it should have done so prior to his admission***." Appx9-10 (citing Appx1728) (emphasis added).

## B.     '491 Patent Issues

Both parties filed summary judgment motions on infringement, which included claim construction briefing on the term "frame," reproduced in context below:

1. An illuminated school bus sign for direct mounting on a school bus, the sign comprising: …

   frame surrounding a perimeter of the translucent panel and forming a perimeter of the sign for mounting the sign to the school bus …

Appx5610-5611 (22:52 - 23:6).

Smartrend argued "frame" should be accorded its plain and ordinary meaning. Appx2498-2500. Opti-Luxx argued among other things that "frame" means "a component distinct and separate from an illuminated sign," and that it did not

---

[1] Opti-Luxx did not file a Fed. R. Civ. P. 59 motion for a new trial.

infringe because its frame was integral with the rest of its sign. Appx4222-4223, see also Appx4605; Appx3226-3227.

The district court concluded that "frame" should be afforded its ordinary meaning (Appx71-72) but also that it is "a distinct component separate from the remainder of the sign." Appx82.

Finally, the district court found no literal infringement because the Opti-Luxx "frame is integral to the sign as a whole and not a separate component." Appx84. The district court found a fact issue for the doctrine of equivalents, i.e.: "[t]he primary difference, then, appears to be the integrality of the frame to the remainder of the sign. Whether this difference is substantial is a question for the jury." Appx91.

## C.    Trial and Post-Trial Motions

At trial, the jury found Opti-Luxx's signs infringed Smartrend's patents and awarded the full amount requested – $23,307.84 – in lost profits.[2] The jury also found Opti-Luxx's infringement willful. Appx1928-1931.

Opti-Luxx moved for judgment under Fed. R. Civ. P 50(b) ("JMOL"), on the jury's findings of: (1) design patent infringement and (2) infringement under the doctrine of equivalents for the "frame" limitation. Appx2255-2279; Appx5229-5240. Smartrend moved for a permanent injunction (Appx2078-2080),

---

[2] Opti-Luxx dropped its invalidity claims for both patents at trial. Appx1878-1879.

enhanced damages and an exceptional case. (Appx2142-2143). The district court denied Opti-Luxx's JMOLs (Appx6-14), granted the injunction, and denied Smartrend's enhanced damages and exceptional case motions. Appx5-28.

## SUMMARY OF THE ARGUMENT

Opti-Luxx raises two issues for the D930 Patent. First, Opti-Luxx asserts that the district court committed error in construing the term "transparency." In reaching its construction, the district court relied solely on extrinsic evidence—unchallenged expert testimony on the "industry definition," the MPEP and another case—in determining its meaning to those skilled in the art. Appx49-51. After "weighing the evidence" offered, the district court found "transparency" was "capable of being synonymous with translucency." Appx51.

Opti-Luxx fails to establish that the district court's factual findings based on this extrinsic evidence were clearly erroneous. The district court properly relied on Mr. York's expert opinion on the meaning of "transparency" to those skilled in the art, especially where Opti-Luxx did "not offer evidence of a competing industry definition." Appx50. Further, Mr. York's testimony is consistent with the intrinsic evidence since the internal components are not visible in the D930 Patent's drawings. Indeed, if these lens surfaces were transparent, these internal structures would be visible. And his testimony is consistent with the MPEP. Since the MPEP allows use of oblique lines to denote both transparent and translucent surfaces, it makes sense that the patentees chose "transparency" to describe both because, as Mr. York's undisputed testimony established, those skilled in the art understand "transparency" – which is a term of degree – to cover both.

19

Second, Opti-Luxx asserts that the district court abused its discretion in admitting Smartrend's expert Brent York's testimony on design patent infringement because he allegedly lacked qualifications to opine from the perspective of an ordinary observer. However, Opti-Luxx fails to address the district court's finding that its objection to Mr. York's qualifications was untimely. Thus, any challenge to that untimeliness finding was forfeited. As such, contrary to Opti-Luxx's assertion, the standard of review is plain error, not abuse of discretion.

Regardless, Opti-Luxx cannot meet either standard. Mr. York detailed his substantial credentials in the design, development, and marketing of illuminated signage in the transportation industry, which qualified him to testify as to the design similarities between the patented and accused designs and his opinion that an ordinary observer would find them to be substantially similar. Contrary to Opti-Luxx's assertion, and as found by the district court, Mr. York does not have to be an ordinary observer or conduct a survey to testify from the perspective of an ordinary observer. Moreover, any challenges to these qualifications go to the weight of his testimony, not its admissibility. As such, the district court did not commit plain error or an abuse of discretion in admitting Mr. York's testimony.

Regarding the '491 Patent, Opti-Luxx did not establish an absence of any genuine issues of material fact for the jury, and that reasonable minds could come only to a conclusion of non-infringement. On the contrary, substantial evidence

20

supports the jury's verdict of infringement under the doctrine of equivalents. At trial, Smartrend's expert, Mr. York, testified and physically demonstrated how the integral frame of Opti-Luxx's product was equivalent to the claimed separate frame. He testified both that the accused integral frame is interchangeable with the claimed separate frame and thus is an insubstantial change, and that the accused integral frame performs the same function in the same way to achieve the same result as the claimed separate frame.

Opti-Luxx argues Mr. York "conceded" the accused sign allegedly lacks "the benefits of having a frame separate from the sign" and that Opti-Luxx's frame was not "separable" from the sign "in that sense." Opti-Luxx's argument fails because neither the asserted claims nor district court's construction require "a frame separate from the sign" nor a "separable" frame. Moreover, Mr. York made no such admission and was questioned only about embodiments in the specification that had a separate frame that could removably receive a separate sign. Lastly, the functions attributable to a claim limitation is an issue of fact and Mr. York's testimony as to the functions of the claimed "frame" clearly created genuine issues of fact.

In addition, the district court's infringement finding can also be affirmed, in the alternative, on the ground that Opti-Luxx's signs literally infringe the '491 Patent. The district court found noninfringement only after erroneously adding a "separate and distinct component" requirement to the claims, based on an incorrect

finding that Smartrend disclaimed integral frames in the specification. The district court erred in finding disclaimer when none of the intrinsic evidence disparages, distinguishes, or even references, an integral frame. Because Opti-Luxx never disputed that its bus sign meets the "frame" limitation when properly construed to have its plain and ordinary meaning, Opti-Luxx literally infringes the '491 Patent as a matter of law. Accordingly, this Court can affirm infringement on this alternative basis.

# ARGUMENT

**I.     In Construing the Term "Transparency" in the D930 Patent, the District Court's Fact Findings Were Not Clearly Erroneous, and its Construction Based on Those Findings Was Correct**

## A.     Opti-Luxx Fails to Show the District Court's Factual Findings on the Meaning of Transparency to Those Skilled in the Art Are Clearly Erroneous

Per *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 324, 331-32 (2015),

claim construction fact findings are reviewed under the "clearly erroneous" standard

when the district court needs to go beyond the patent's intrinsic evidence and

"consult extrinsic evidence in order to understand, for example, . . . the meaning of

a term in the relevant art during the relevant time period."[3]  Here, the district court

needed to go beyond intrinsic evidence to resolve the parties' dispute concerning the

"definition of 'transparency'" to those skilled in the art.  Appx49. Indeed, the district

court relied solely on extrinsic evidence—unchallenged expert testimony on the

"industry definition," the MPEP and another case (*Nichia*)—in resolving this

dispute. Appx49-51. After "weighing the evidence" offered, the district court found

---

[3] Opti-Luxx acknowledges the deferential standard of review for fact findings on claim construction, referencing the "substantial evidence" standard employed in reviewing PTAB decisions.  Blue at 24 (quoting *Personal Web Tech., LLC v. Apple, Inc.*, 848 F.3d 987, 990 (Fed. Cir. 2017)).

"transparency" was "capable of being synonymous with translucency." Appx51; *Teva*, 574 U.S. at 331-32.

Opti-Luxx fails to show that the district court's factual findings based on this extrinsic evidence were clearly erroneous, and they are not. Smartrend provided expert testimony from Mr. York on the industry definition of transparency. Specifically, Mr. York explained how one skilled in the art of light-emitting devices would understand the meaning of the term "transparency" in this field. Appx523-529. Mr. York relied on his 37 years of experience in light-emitting devices, the intrinsic record of the D930 patent, the deposition of the inventor concerning the term's meaning in the industry, his own understanding of the term's meaning in the field of light-emitting devices, the use of transparent/translucent as interchangeable in the related '491 Patent, and the MPEP. *Id.* He concluded that in the field of light-emitting devices, "the term 'transparency' describes regions or areas allowing light to pass through such that the term transparent can be used interchangeably with translucent in the context of light emission." Appx524 (¶39). As the district court stated, Opti-Luxx did "not offer evidence of a competing industry definition." Appx50.

Opti-Luxx asserts that the MPEP makes a distinction between "transparent" and "translucent" and that "Smartrend made a deliberate[4] choice not to claim translucency in their design patent," and thus, "intentionally narrowed the scope of the ornamental design." Blue Br. at 24-25. But Opti-Luxx cites no evidence of such intent to disclaim, because there is none. Indeed, the MPEP guideline uses the terms "transparent" and "translucent." MPEP §1503.02. And as discussed above, the term "transparency," a term which necessarily implies a measure of degree, interchangeably refers to both transparent and translucent regions to those skilled in the art. Appx524 (¶39). Thus, it was reasonable for the patentees to use "transparency" in the D930 Patent to refer to both. Nor does Opti-Luxx cite any evidence that "transparent" as used in the MPEP is consistent with how the term "transparency" is used in the relevant art of the D930 patent, nor that, as Opti-Luxx asserts, its meaning mutually excludes any degree of translucency. Finally, the district court considered the MPEP, along with specific extrinsic evidence from Mr. York and others skilled in the art such as the inventor (Appx524-529) and found that

---

[4] In its Summary of the Argument, Opti-Luxx asserts that use of the word "transparency" instead of both "transparency" and "translucency" was "presumptively deliberate." Blue Br. at 21. Opti-Luxx cites no case law for such as presumption and does not argue for such a presumption in its Argument section.

the meaning of "transparency" to those skilled in the art is interchangeable with "translucency." Appx50-51.

### B. The District Court's Construction Based on Its Findings Conforms with Intrinsic Evidence and Was Correct

Where a court makes a fact-finding on the meaning of a term in the relevant art, the legal analysis considers whether one skilled in the art would ascribe that same meaning to the term "*in the context of the specific patent claim under review*." *Teva*, 574 U.S. at 332 (emphasis in original). Consistently, the district court here recognized that transparency "needs to be construed by reference to the patent itself." Appx50. On this point, the district court expressly found that Opti-Luxx provided "no evidence for its definition of transparency," intrinsic or extrinsic. Appx50. Thus, there is nothing to suggest that a skilled artisan would understand "transparency" in the patent to mean anything different than how a skilled artisan would understand as used in the art. *Teva*, 574 U.S. at 331-32.

Opti-Luxx, however, now asserts that "the intrinsic evidence here requires a construction of the patent as claiming only a transparent lens." Blue Br. at 28. Yet, Opti-Luxx fails to identify any such intrinsic evidence. *Id.* Opti-Luxx likewise cites no specific evidence when its asserts that Mr. York's opinion is "inconsistent with the specification and file history." Blue Br. at 28. To the extent Opti-Luxx contends that usage of the term "transparency" itself is the intrinsic evidence, Opti-Luxx is

wrong, because using the term "transparency" says nothing about what "transparency" means to one skilled in the art in the context of the D930 Patent.

In fact, the only intrinsic evidence that sheds light on the meaning of "transparency" in the D930 Patent confirms the district court's finding that "transparency" is interchangeable with translucency to those skilled in the relevant art. Appx527-528 (¶45). In the figures in the D930 specification, "despite showing oblique lines denoting 'transparency,' to certain light transmission[,] none of the internal features of the sign such as LEDs or the interior of the housing are depicted." *Id.*, discussing Appx5559, Appx5561-5562. If these lens surfaces were completely transparent in the manner Opti-Luxx argues, these internal structures would be visible; yet they are not visible. *Id.* And if the Examiner believed the lens surfaces were completely transparent, he or she would have required the inventors to add these internal structures to the figures; yet the Examiner did not do so. Appx528 (¶45, fn. 3) (citing USPTO Design Patent Application Guide).

The district court did not commit clear error in finding that one skilled in the art would understand "transparency" to mean that it allows light to pass through and is interchangeable with translucency, and its claim construction is correct.

### C.    Opti-Luxx's Attorney Arguments Are Largely New on Appeal, Mischaracterize the Record, and Fail to Show Any Error

Opti-Luxx makes several other arguments that fail to show any error in the district court's construction.

First, Opti-Luxx improperly offers, for the first time on appeal, new proposed definitions of "transparent" and "translucent" from case law. Blue Br. at 25-26 (citing *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1384 (Fed. Cir. 2005)). Because these proposed definitions were not of record below, they should not be considered here. *Aristocrat Techs. Australia PTY Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1361 n.1 (Fed. Cir. 2013). Notwithstanding, *Terlep* does not support Opti-Luxx. In *Terlep*, the district court was deciding whether the term "clear holder" in a 1997 utility patent encompassed both a transparent and a translucent holder. 418 F.3d at 1382. The district court found it did not because: (1) numerous portions of the written description indicated that the term "clear" referred to holders that are transparent and distinguished those that are not, and (2) the patentee added the term "clear" to "distinguish[] the claimed invention from the prior art," which was not clear but "roughened to diffuse the light output." *Id.* at 1383-84. Here, in contrast, nothing in the specification nor file history suggests that transparency, as used in the D930 patent, is not interchangeable with translucency. On the contrary, as stated above, the specification figures depict a lens that does not reveal the underlying internal

structures (Appx528 (¶45)) and thus contradicts Opti-Luxx's new proposed definition that "stresses complete absence of obstruction to vision." Blue Br. at 25-26.

Second, Opti-Luxx mischaracterizes the record by asserting that both Mr. York's opinions and the district court's findings on the proper construction of "transparency" were "based entirely on the opinion in *Nichia* construing the meaning of 'transparent' in an unrelated utility patent based on intrinsic evidence." Blue Br. at 14; see also, *Id.* at 28 ("Mr. York … simply imitated the analysis in *Nichia*.") Opti-Luxx is wrong. The district court referenced *Nichia* for the proposition that "'transparent' needs to be construed by reference to the patent itself, and that in doing so it is possible to give it a meaning synonymous with translucent." Appx50. Mr. York, following a detailed analysis of the intrinsic and extrinsic evidence, referenced *Nichia* only as providing a "final confirmation" for the meaning of the term "transparency" in the field of "light-emitting devices." Appx528-529 (¶¶46-47).

Opti-Luxx further states that, in imitating *Nichia*, Mr. York "looked at the functional interchangeability of the transparent and translucent surfaces rather than their ornamental differences." Blue Br. at 28. This is new argument not raised below which cannot be raised for the first time on appeal. *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322-23 (Fed. Cir. 2008). Regardless, Mr. York utilized an example to explain how those skilled in the art understand the meaning of the

term transparency as used in the D930 Patent – which was the issue at hand. Appx527-529 (¶¶44-47). Moreover, as Mr. York stated, the degree of transparency and/or translucency impacts the ornamental appearance of the sign, e.g., whether one can see the internal components. Appx528.

Finally, Opti-Luxx asserts that the district court should have declined to construe "transparency." Blue Br. at 29. Again, Opti-Luxx never made this argument in the district court and thus, it cannot make it for the first time here. *Golden Bridge Tech.*, 527 F.3d at 1322-23. Regardless, before denying "Opti-Luxx's motion to constru[e] . . . 'transparency'" (Appx1677, ll. 08-11), the district court asked Opti-Luxx if it was required to construe "transparency," and Opti-Luxx stated: "the Court always has to legally indicate what the claim means," because the inventor had acted "as his own . . . lexicographer and gave the term a special meaning." Appx1666 - Appx1667.

The district court did not clearly err in finding that construction of "transparency" in the D930 Patent was interchangeable with translucency in the relevant art, and its construction based on that finding was correct.

## II.    The District Court Did Not Commit Plain Error nor Otherwise Err in Concluding Mr. York Was Qualified to Testify on Design Patent Infringement

### A.    Since Opti-Luxx Did Not Timely Object to Mr. York's Qualifications, the Standard of Review is Plain Error

Opti-Luxx asserts that "Mr. York was not qualified to opine on the perspective of an ordinary observer" and that the district court's admission of Mr. York's testimony is reviewed under an "abuse of discretion" standard. Blue Br. at 30-31. In fact, as explained below, the district court's admission is reviewed under the "plain error" standard because Opti-Luxx failed to timely object to Mr. York's qualifications. Appx1901 (ll. 10-25); Appx9-10.

"Where a party fails to make a timely objection, stating the specific grounds for his objection as required by Federal Rule of Evidence 103(a)(1), [] review is limited to 'plain error.'" *United States v. Levy*, 904 F.2d 1026, 1029 (6th Cir. 1990) (citing Fed. R. Evid. 103).[5] To establish plain error, Opti-Luxx must show there was "error," that is "clear or obvious," affected its "substantial rights" and "seriously affected the fairness, integrity, or public reputation of the judicial proceeding."

---

[5] Whether there was a failure to timely object to expert testimony or whether that expert testimony is admissible is "not unique to patent law," so the "decision to admit expert testimony" is reviewed "under the law of the regional circuit." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1294 (Fed. Cir. 2015).

*United States v. Sypher*, 684 F.3d 622, 627-28 (6th Cir. 2012) (citing *United States v. Olano*, 507 U.S. 725, 732-35 (1993)).

Here, the district court found that Opti-Luxx's objection to Mr. York's qualifications to testify was untimely. Appx1801 (ll. 10-25); Appx9-10. Indeed, although Opti-Luxx received Mr. York's expert report including qualifications and detailed opinions on Opti-Luxx's infringement of the D930 patent (Appx508-548), Opti-Luxx did not file a *Daubert* motion nor motion *in limine* challenging his qualifications.[6] Appx5661-5675. At trial, Opti-Luxx's counsel took *voir dire* of Mr. York and asked numerous, specific questions regarding his qualifications, including as they relate to design patent infringement. Appx1698-1703. The district court then asked Opti-Luxx's counsel: "Anything else as it relates to his qualifications?" and counsel answered: "No. I think we're good." Appx1703 (ll. 14-17). The district court then asked if Opti-Luxx objected to Mr. York's admission and Opti-Luxx's counsel stated: "I don't object." Appx1703 (ll. 18-20).

***After*** Mr. York was qualified as an expert and began testifying, Opti-Luxx attempted to challenge Mr. York's qualifications to testify on design patent

---

[6] Notably, the district court found that Opti-Luxx "was well aware of both the legal analysis governing this case and of York's intended contribution to that analysis by way of his expert report," and thus, should have objected in a timely manner. Appx9-10.

32

infringement, which the district court overruled, stating: "All right. He was admitted as an expert in LED lighting and illuminated signage, and he's giving his opinion." Appx1727-28. The district court found Opti-Luxx's challenges to Mr. York's qualifications to testify from the perspective of an ordinary observer to be untimely, stating: "the time to do that was at the time *before he was qualified*. He's already been qualified as an expert." Appx1901 (ll.10-25) (emphasis added). In its Order on Opti-Luxx's Fed. R. Civ. P. 50(b) motion, the district court reiterated its ruling that Opti-Luxx had forfeited any challenge to Mr. York's qualifications by not making a timely objection at trial.

> [I]f OLI wished to challenge York's qualifications to testify as to certain aspects of the legal test, *it should have done so prior to his admission*. But OLI did not challenge York's admission. (Trial Tr. II, 312.) … It is too late to disqualify the portion of York's expert testimony relating to the ordinary observer test.

Appx9-10 (emphasis added).

Here, Opti-Luxx's opening brief fails to address the district court's finding that its challenge to Mr. York's qualifications was untimely. "[I]ssues not addressed in the argument section of a party's opening brief are considered waived." *Rodriguez*

*v. Dep't of Veterans Affairs*, 8 F.4th 1290, 1296 (Fed. Cir. 2021). As a result, Opti-Luxx waived any such challenge to its untimeliness on appeal. *Id.* at 1296.[7]

Because Opti-Luxx did not timely object to Mr. York's qualifications at trial, the review of the admission of his testimony is *plain error*. Notwithstanding, the district court's admission of Mr. York's testimony was proper under either the plain error or abuse of discretion standards.

### B. The District Court Did Not Commit Plain Error nor Abuse its Discretion in Admitting Mr. York's Expert Testimony on Design Patent Infringement

Opti-Luxx points to no plain error, nor abuse of discretion, in the admission of Mr. York's testimony. Blue Br. 31-34. On the contrary, Mr. York detailed his substantial credentials in the design, development and marketing of illuminated signage in the transportation industry. Appx1681-1697. Mr. York was highly qualified, through his experience in the design and marketing of illuminated signage in the transportation industry, to testify as to the design similarities between the patented and accused designs and his opinion that an ordinary observer would find them to be substantially similar. Appx1703-1712; Appx1721-1730. Any alleged

---

[7] Opti-Luxx should not be permitted to newly address this issue in its reply. *Commun's Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1363 n.4 (Fed. Cir. 2020) (issue waived where first raised in reply brief)); *Braun v. Dep't of Health and Human Serv's*, 983 F.3d 1295, 1305 (Fed. Cir. 2020) (waiver provides "fairness to appellees" who otherwise are denied a response to issues first raised in the reply brief).

"weaknesses" in his qualifications to testify from the perspective of an ordinary observer would "go to the weight rather than the admissibility of his opinion testimony." *United States v. Nixon*, 694 F.3d 623, 629-30 (6th Cir. 2012); *First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 333 (6th Cir. 2001) (holding that a lending expert's unfamiliarity with "some aspects" of lender-borrower relationships "merely affected the weight and credibility of his testimony, not its admissibility").

Further, Opti-Luxx took the opportunity to extensively *voir dire* Mr. York and yet, chose not to challenge any purported deficiencies in his qualifications relating to an "ordinary observer" before he was admitted as an expert. Appx1698-1703. Opti-Luxx also had the opportunity to cross-examine Mr. York on any perceived deficiencies in his qualifications, which Opti-Luxx did extensively. Appx1753-1768. As such, there was no plain error, nor abuse of discretion, in admitting Mr. York's testimony. *Morales v. American Honda Motor Co.*, Inc., 151 F.3d 500, 515 (6th Cir. 1998) (finding "because opposing counsel was provided, and took full advantage of, the opportunity to challenge the expert's qualifications to testify in the area in question, [and] the court instructed the jury that they were to determine the weight

and credibility of the witness' testimony, the trial court did not err in allowing the expert to testify.") [8]

In its introduction, Opti-Luxx asserts that "Smartrend laid no foundation to show the expert had any experience with purchasing school bus signs *or with such purchasers*." Blue Br. at 3 (emphasis added). Opti-Luxx's trial objection to Mr. York was ultimately based on qualifications, not foundation: "there's been no testimony that this witness is *qualified* to testify . . . because there's been [no] testimony this witness is an ordinary observer." Appx1727 (ll. 15-20) (emphasis added). Indeed, Opti-Luxx admitted the trial objection was based on qualifications, which the Court found to be untimely. Appx1901 (ll. 10-25). To the extent Opti-Luxx's asserts a new lack of foundation objection more broadly than its objection at trial that Mr. York himself is not an ordinary observer, it was waived. *Golden Bridge Tech*., 527 F.3d at 1322-23.

Regardless, ample authority supported the district court's finding that Mr. York did not have to be an ordinary observer or conduct a survey to testify from the perspective of an ordinary observer. Appx9 (citing *Kitsch LLC v. Deejayzoo, LLC*, No. CV19-02556 JAK, 2023 WL 4291445, at *8-9 (C.D. Cal. May 8, 2023)

---

[8] The jury was also instructed it was "to decide which witnesses to believe, [or] not to believe, [] how much of any witness's testimony to accept or reject, [and] what weight, if any, [it should] give to the testimony …" Appx1462-1463.

("Because [the expert] offers his opinions through the lens of the hypothetical, ordinary observer based on his design expertise and understanding of the typical purchaser, these opinions are admissible."); *see also Apple, Inc. v. Samsung Elecs. Co., Ltd*., No. 11–CV–01846–LHK, 2012 WL 2571332, at * 2 (N.D. Cal. June 30, 2012) (Expert's design experience "adequately qualifies him to testify about the perspective of an ordinary observer under FRE 702 and *Daubert*")).

Moreover, Mr. York's testimony was confirmed by unrebutted testimony that bus dealers (i.e., purchasers of the bus signs), were deceived by the Opti-Luxx products into believing these signs were the patented design. Appx 1575(ll. 15-20); Appx1576 (ll. 5-7); Appx1577-1578. "Unrebutted testimony of actual confusion may be evidence from which a jury might reasonably conclude that an accused product meets the ordinary observer test." *Amini Innovation Corp. v. Anthony California, Inc*., 211 Fed. Appx. 938, 941-42 n.2 (Fed. Cir. 2007). Thus, any alleged error in admitting Mr. York's testimony was also harmless.

As such, the district court did not commit plain error nor abuse its discretion in admitting Mr. York to testify as to the perspective of an ordinary observer on design patent infringement. *SEB S.A. v. Montgomery Ward & Co.*, 594 F.3d 1360, 1373 (Fed. Cir. 2010) (district courts have "wide latitude" to qualify experts).

### III.    Substantial Evidence Supports the Jury's Verdict that Opti-Luxx Infringed the '491 Patent Under the Doctrine of Equivalents

#### A.    Standard of Review

Opti-Luxx raises one challenge to the jury's verdict that Opti-Luxx infringed the '491 Patent under the doctrine of equivalents. Opti-Luxx argues the district court should have granted JMOL that the accused products' integral frame is not equivalent to the claimed frame. Blue Br. at 34-38. Under Sixth Circuit law, this Court may reverse the denial of Opti-Luxx's motion for JMOL "only if in viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion, in favor of the moving party." *Equal Emp't Opportunity Comm'n v. New Breed Logistics*, 783 F.3d 1057, 1065 (6th Cir. 2015) (citation omitted). Opti-Luxx fails to meet this standard because Smartrend presented substantial evidence in its favor and thus at least created a genuine issue of material fact on the equivalents issue. Appx1735-1740; Appx1819-1845; Appx1874-1875.

#### B.    Mr. York Offered Substantial Evidence that the Accused Products' "Integral" Frame is Equivalent to the Claimed (as Construed) "Separate" Frame

The sole equivalents issue at trial was whether the accused products' integral frame is equivalent to the claimed frame, which the district court construed as "a distinct component separate from the remainder of the sign." Appx82. The asserted

claims require a "frame surrounding a perimeter of the translucent panel and forming a perimeter of the sign for mounting the sign to the school bus." Appx5610-5611 (22:52-23:6). After the district court concluded the frame must be "separate from the remainder of the sign," it found no literal infringement because the accused products' "frame is integral to the sign as a whole and not a separate component." Appx82; Appx84. Thus, the jury had to determine whether the accused "integral" frame is equivalent to the claimed (as construed) "separate" frame. The district court structured the jury issue as follows: "[t]he primary difference, then, appears to be the integrality of the frame to the remainder of the sign. Whether this difference is substantial is a question for the jury." Appx91.

At trial, Smartrend presented substantial evidence, through both testimony and a physical demonstration from its expert Mr. York (Appx11-13), that Opti-Luxx's integral frame is equivalent to the claimed separate frame for two reasons. First, the accused integral frame is interchangeable with the claimed separate frame and thus is an insubstantial change. Second the accused integral frame performs the same function in the same way to achieve the same result as the claimed separate frame.

On interchangeability, it bears emphasis that the '491 Patent includes examples where the frame, though separate, is "permanently affixed" to other components of the sign (Appx76 (quoting Appx5607 (15:6-9) and Appx5608,

(18:33-50)) and it includes other examples where the separate frame is separable from the rest of the sign. Appx75 (quoting, e.g., Appx5605 (11:11-13)). Consistent with the specification, Smartrend's expert Mr. York explained that "there's a wide variety of ways of doing things," and the integral frame used by Opti-Luxx was an "insubstantial change" from the claimed design because, whether it was created as a single integrated piece or whether the frame and rear panel were created separately and affixed together (e.g., gluing), it still does everything the same way. Appx1736-1738; Appx1839-40. "The known interchangeability of substitutes for an element of a patent is one of the express objective factors . . . bearing upon whether the accused device is substantially the same as the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 36 (1997); *Minks v. Polaris Industries, Inc.*, 546 F.3d 1364, 1379 (Fed. Cir. 2008) (affirming denial of JMOL of no infringement finding substantial evidence supported jury's infringement verdict where expert testified to interchangeability).

Mr. York also performed a detailed function-way-result analysis, providing independent grounds for the jury's finding on equivalents. *See Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1330 (Fed. Cir. 2009). Mr. York explained that the function of the separate frame component as claimed in the '491 Patent is the same as the function of the frame in the Opti-Luxx signs ("surrounding" and "form[ing] a perimeter of the sign for mounting"), and that the Opti-Luxx frame performs those

functions in substantially the same way as claimed, to achieve the same result. Appx1735-1740; Appx1833-1835; Appx1837-1840; *Cordis Corp.*, 561 F.3d at 1330 (affirming denial of noninfringement JMOL motion because verdict of infringement under doctrine of equivalents properly supported by substantial evidence in form of function-way-result analysis).

Mr. York's unrebutted testimony allowed the jury to judge his credibility, weigh the evidence and conclude that there was equivalence. Given the substantial evidence showing that Opti-Luxx's integral frame was interchangeable with the claimed frame and meets the "function-way-result" analysis, Smartrend at least created a genuine issue of fact, and the district court correctly denied JMOL on the issue.

### C.    Opti-Luxx's Challenges Fail

#### 1.    Opti-Luxx Improperly Relies on Functions Not Required by the Claims nor the District Court's Construction

Opti-Luxx argues Smartrend's evidence was "insufficient" because the accused sign allegedly lacks "the benefits of having a frame separate from the sign" and Mr. York "conceded" that Opti-Luxx's frame was not "separable" from the sign "in that sense." Blue Br. at 36. (quoting Appx1836). Opti-Luxx's argument fails because neither the claims nor district court's construction require "a frame separate from the [entire] sign" nor a "separable" frame.

41

The district court held that the asserted claims require that the frame be a structure "separate from," rather than "integral to," "the *remainder of* the sign." Appx82 (emphasis added); Appx84. The district court did not require "a frame separate from the [entire] sign" and it could not because the claim expressly states the "sign . . . compris[es] . . . [a] frame . . . forming a perimeter of the sign." Appx5610 (22:52-64). Thus, the frame is part of the sign. Because the claim—as written and as construed—does not require "a frame separate from the sign," Opti-Luxx's arguments that the accused sign lacks "the benefits of having a frame separate from the sign" are irrelevant.

Similarly, the district court did not hold that the "separate" frame must be functionally "separable" from rest of the sign. On the contrary, the district court expressly discussed an example of a frame that was "separate" but "permanently affixed to" —i.e., not separable from— "the rest of the sign." Appx76. Thus, a "separate" structure need not be "separable," and the district court did not hold that the claimed frame needed to be "separable" from the rest of the sign.

Mr. York testified, and the '491 patent claims confirm, that the frame's only claimed functions are "surrounding a perimeter of the translucent panel and forming a perimeter of the sign for mounting the sign to the school bus." Appx1736-1740; Appx1833-1834. And as stated above, Mr. York also testified that the frame in Opti-Luxx's product performs these functions. Appx1736-1737; Appx1834.

Contrary to Opti-Luxx's assertions, Mr. York did not admit that any of these unclaimed functions were claimed. Blue Br. at 36. Instead, Opti-Luxx's counsel asked Mr. York if Opti-Luxx's accused sign had features of certain *embodiments* described in the '491 Patent's specification, which utilized a self-contained sign and a separate mounting frame. Appx1821-1827; Appx1829-1833. Mr. York repeatedly emphasized that these alleged benefits are not claimed. Appx1833 ("[c]hanging the sign out is not part of the claim."); *see also* Appx1835. Opti-Luxx is attempting to improperly import unclaimed functional limitations into the claims. *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1383 (Fed. Cir. 2001) ("Having identified the functions in the claim …, we look to the way in which those functions are accomplished and the attendant results in the specification.")

### 2. Substantial Evidence Supports the Jury Rejecting Opti-Luxx's Arguments on the Required Functions

Moreover, determining the claimed function for a structural claim limitation is a question of fact for the jury. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1314-15 (Fed. Cir. 2009). Contrary to Opti-Luxx's assertions, there is no requirement that an element of an accused device offer every functional benefit of a claimed structure to be deemed equivalent. *Id*. at 1315. In *Crown Packaging*, this Court found a fact issue where, as here, the patentee asserted that a structural limitation required a singular function, and the defendant's attorneys

43

argued it had two additional functions not performed in the accused device. *Id*. Here, the jury considered both parties' arguments on the required functions of the claimed frame and concluded Opti-Luxx's integral frame was equivalent to the claimed separate frame. Appx1929.

In short, determining the functions of a claimed structure, and whether the absence of those functions constitutes an insubstantial difference, are questions for the jury. Mr. York presented substantial evidence on these issues which created a genuine issue of fact and supports the jury's findings. This Court should affirm the judgment that Opti-Luxx infringed the '491 Patent.

## IV. This Court Can Affirm Infringement of the '491 Patent on Alternative Grounds Because Opti-Luxx Literally Infringed Under the Proper Construction of the "Frame" Limitation

### A. Alternative Ground for Affirmance and Standard of Review

Although the jury correctly found Opti-Luxx's accused products infringe under the doctrine of equivalents, an alternative ground for affirmance flows from the district court's erroneous construction that the claimed "frame" must be a "separate and distinct component" of the sign. Appx82. Smartrend argued the claimed frame could be "integral" with the sign or a "separate and distinct component." Appx5132-5133. The district court acknowledged that "frame" as "used in the claim" could "support two meanings," *i.e.*, "integral" or "separate component." Appx72-73. But the court excluded "integral" because it found a

44

disclaimer in the specification. Appx77-78. As explained below, the district court erred in its construction because there was no disclaimer. And since there is no dispute that Opti-Luxx's product literally infringes under Smartrend's construction, correcting the district court's construction provides an alternative ground for affirmance.

Because the district court based its construction on intrinsic evidence (the specification), this Court reviews the construction *de novo*. *Teva*, 574, U.S. at 331.

## B. The Claims, Specification and Prosecution History Show Patentee Did *Not* Disclaim Integral Frames

There is no dispute that the claims do not address whether the claimed frame is "integral" with or "separate" from the rest of the sign. On the contrary, and as stated above, the district court stated that "frame" as "used in the claim" could "support two meanings," *i.e.*, "integral" or "separate component." Appx72-73. The district court further stated that its construction was "not departing from the ordinary and plain meaning of 'frame' or redefining it." Appx77. Yet the court's construction imports into the claims the requirement that the "frame" be "separate and distinct" from, and not integral with, the rest of the sign. The district court stated it was "giving content" to the term "by reference to the specifications" (Appx77), but such "reference" does not justify importing an unclaimed limitation into the claims, "one of the cardinal sins of patent law." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) (en banc).

45

To justify its "separate and distinct" construction, the district court relied on "disclaimer by implication" (Appx73-74) and concluded the specification disclaimed integral frames. Appx71-78. "To disavow claim scope," however, "the specification must contain ***expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope***." *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 797 (Fed. Cir. 2019), cert. denied, 140 S. Ct. 648 (2019) (internal quotations omitted) (emphasis added). The standard for disavowal is "exacting," and requires "clear and unequivocal evidence that the claimed invention includes or does not include a particular feature." *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016). To support its disclaimer conclusion, the district court cited the specification and three cases, but none support disclaimer.

Regarding the specification, the district court stated that the "patent repeatedly . . . refers to a 'separate mounting frame,'" it "extols the virtues of its separate mounting frame," and "never once indicat[es] that the mounting frame is anything other than a separate, distinct component." Appx74-75. But none of these assertions disparage, distinguish, or even reference, an integral frame. They therefore do not amount to an "expression[] of manifest exclusion or restriction, representing a clear disavowal" of an integral frame. *Cont'l Circuits LLC*, 915 F.3d at 797.

Indeed, "[e]ven when the specification describes only a single embodiment, the claims of the patent will not be read restrictively unless the patentee has

46

demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Liebel-Flarsheim v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (quoting *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002)). Moreover, it is common and entirely proper to claim a specific subset of features of a disclosed embodiment in a particular patent claim or set of claims. *ScriptPro, LLC v. Innovation Assocs., Inc.*, 762 F.3d 1355, 1359 (Fed. Cir. 2014); *Cordis Corp. v. Boston Scientific Corp.*, 188 Fed. Appx. 984, 990 (Fed. Cir. 2006) ("[W]hen a patent includes two inventive components, particular claims may be directed to one of those inventive components and not to the other.")

Moreover, here the PTO expressly found the '491 Patent claims were patentable because of the way the signs were *weatherproofed* by creating a weather-tight seal between the spacer and the translucent panel (Appx3919; Appx3987), which the patent touts as "preventing dust and moisture from penetrating the unit." Appx5607 (16:36-39). In contrast, in the parent '673 Patent, which is not asserted, the patentees chose to expressly claim a "self-contained illuminated sign" and a "separate mounting frame." Appx3875 (22:49-64).

## C. The *Retractable*, *Abbott Diabetes* and *Abbott Labs* Cases, on Which the District Court Relied, Show Patentee Did *Not* Disclaim Integral Frames

The cases cited by the district court reinforce why there is no disclaimer here. *See* Appx73-78, discussing *Retractable Technologies, Inc. v. Becton, Dickinson and*

47

*Co.*, 653 F.3d 1296 (Fed. Cir. 2011), *In re Abbott Diabetes Care, Inc.*, 696 F.3d 1142, 1150 (Fed. Cir. 2012) ("*Abbott Diabetes*") and *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1287 (Fed. Cir. 2009) ("*Abbott Labs*").    In each of these cases, the Court required more than a mere consistent description of a feature in the specification. In each, the Court found the specification expressly disparaged, distinguished, or removed the disclaimed subject matter—factors not present here.

In *Retractable*, the Court affirmed a construction limiting the term "body," in a claim directed to a syringe, to a *one-piece* body. 653 F.3d at 1304-05. There, the specification not only "indicate[d] that the claimed 'body' refers to a one-piece body," it also "distinguish[ed] prior art syringes comprised of multiple pieces, [by] stat[ing] that the prior art had failed to recognize a retractable syringe that 'can be molded as one piece outer body.'" *Id.* at 1305. Here, the patentees made no such statements distinguishing frames that were integral with other components.

Similarly, in *Abbott Diabetes*, the issue was whether the "construction of 'electrochemical sensor'" should exclude use of any external cables and wires. 696 F.3d at 1149-50. First, unlike the case here, this Court found "the claims themselves suggest connectivity without the inclusion of cables or wires." *Id.* Moreover, the Court found that not only did "Abbott's patents 'repeatedly, consistently, and exclusively' depict an electrochemical sensor without external cables or wires," Abbott did so "while simultaneously disparaging sensors with external cables or

48

wires." *Id.* Here, the district court did not identify anything in the '491 Patent that disparages integral frames. Appx74.

Finally, in *Abbott Labs*, the issue was whether the term "crystalline" should be construed as limited to Crystal A or also cover Crystal B. 566 F.3d at 1289-90. This Court found a clear and intentional disavowal of Crystal B compounds because (1) the *priority* application to the patent-in-suit described and claimed Crystal A and Crystal B compounds, but (2) "Abbott . . . jettisoned the Crystal B disclosure" in the application to the patent-in-suit (*Id.* at 1287), which "strongly suggested" an intentional disclaimer. *Id.* at 1290. The case here has essentially the opposite fact pattern. The patentees here knew and could claim a "separate and distinct" frame – as they did in the parent '673 Patent – but intentionally chose not to do so in the '491 Patent – "strongly suggest[ing]" there is no disclaimer.

The district court's importation of a "separate and distinct" requirement into the frame limitation without any evidence of an intentional disclaimer of claim scope, and in the face of evidence that the inventors had intentionally chosen not to add the limitation, does not amount to an intentional disclaimer. As such, the district court's construction was in error and should be reversed. Frame should be accorded its plain and ordinary meaning, which the district court acknowledged could "support two meanings," *i.e.*, "integral" or "separate component." Appx72-73.

### D. Under the Correct Construction of "Frame," the Opti-Luxx Products Literally Infringe the Asserted Claims of the '491 Patent

In the district court, Opti-Luxx never disputed that its bus signs meet the "frame" limitation of the '491 Patent under Smartrend's proposed construction. As such, when the term "frame" is properly construed to have its plain and ordinary meaning, Opti-Luxx literally infringes the '491 Patent as a matter of law.

At summary judgment, Smartrend presented evidence that the Opti-Luxx signs have a frame which surrounds the perimeter of the translucent panel to form a perimeter for mounting the sign to the school bus. Appx2633-2634; see figure below.



In response, Opti-Luxx offered no evidence of non-infringement under this construction, arguing instead that the district court must adopt its proposed construction because Smartrend's proposed construction would read on purported prior art. Appx4220-4225; Appx4234-4235. Importantly, on summary judgment, Opti-Luxx admitted that its product infringed under the ordinary meaning of "frame" as asserted by Smartrend. Appx3229 ("[T]he broad meanings of these terms being

50

asserted by the plaintiff … would not only encompass the Opti-Luxx sign, but would also improperly encompass the prior art effectively rendering the 491 patent invalid.")  Thus, under the correct construction, there are no issues of fact that the Opti-Luxx products meet the frame limitation.

Since Opti-Luxx does not challenge any other limitation of the asserted claims of the '491 Patent, Opti-Luxx is entitled to a finding of literal infringement as an alternate ground of affirmance under the correct construction of "frame".

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, this Court should affirm the district court's judgment.

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

 /s/ Thomas W. Cunningham 
Thomas W. Cunningham
John P. Rondini
Dustin R. Zak
BROOKS KUSHMAN P.C.
150 W. Second St., Suite 400N
Royal Oak, MI  48067-3846
(248) 358-4400

*Counsel for Plaintiff-Appellee*

Date: July 29, 2024

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATIONS

This filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☒ the filing has been prepared using a proportionally spaced typeface and includes 9,777 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Respectfully submitted,

**BROOKS KUSHMAN P.C.**

 /s/ Thomas W. Cunningham
Thomas W. Cunningham
John P. Rondini
Dustin R. Zak
BROOKS KUSHMAN P.C.
150 W. Second St., Suite 400N
Royal Oak, MI  48067-3846
(248) 358-4400

*Counsel for Plaintiff-Appellee*

Date: July 29, 2024