2024-1616, 2024-1650

# United States Court of Appeals
# For the Federal Circuit

**SMARTREND MANUFACTURING GROUP (SMG), INC.,**

*Plaintiff-Appellee*

v.

**OPTI-LUXX INC.,**

*Defendant-Appellant*

Appeals from the United States District Court for the Western District of Michigan in Nos. 1:22-cv-00915-HYJ-RSK, 1:21-cv-01009-HYJ-RSK, Judge Hala Y. Jarbou.

## REPLY BRIEF OF APPELLANT OPTI-LUXX INC.

Gaëtan Gerville-Réache
Warner Norcross + Judd LLP
150 Ottawa Ave. NW, Ste. 1500
Grand Rapids, MI 49503-2832
Telephone: (616) 752-2207
E-mail:     greache@wnj.com

Vito A. Ciaravino
Warner Norcross and Judd LLP
2715 Woodward Ave., Ste. 300
Detroit, MI 48201
Telephone: (313) 546-6179
E-mail:  vciaravino@wnj.com

Attorneys for Defendant-Appellant

Dated: August 26, 2024

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF CONTENTS...........................................................................ii

TABLE OF AUTHORITIES ..................................................................iv

INTRODUCTION ..................................................................................1

ARGUMENT ..........................................................................................1

I.    The oblique shading lines are the claim, which the specification expressly defines as "denot[ing] transparency"; that definition is dispositive and not subject to construction......................................1

    A.    The District Court's construction errs as a matter of law in relying on irrelevant extrinsic evidence to construe the specification, rather than the claim .............................................2

    B.    The lack of internal structures in the claim is meaningless and cannot override the express definition in the specification of "transparency"....................................................5

    C.    Opti-Luxx preserved its proposed claim construction and is entitled to argue in support of that construction and against Smartrend's construction ...............................................6

II.    The District Court erred in admitting testimony on the ordinary observer without foundation, and that error is preserved......................7

    A.    Opti-Luxx preserved the only issue that matters in its appeal of the District Court's evidentiary ruling— whether a POSITA is inherently an ordinary observer..............8

    B.    Smartrend points to no foundation for Mr. York's testimony on the perspective of a bus sign purchaser...............10

C.    Opti-Luxx's objection went to lack of foundation for Mr. York to opine on the ordinary observer .................................... 12

D.    Smartrend's citations to unpublished decisions from district courts are unavailing ..................................................... 14

E.    The District Court's error in allowing an expert to testify on the perspective of an ordinary observer without any foundation was not harmless ..................................................... 16

III.    The '491 Patent's and expert York's admissions that a separate frame has advantages over an integral frame are undisputed, dispositive, and require reversal of the judgment ............................. 17

A.    Opti-Luxx's argument applies the District Court's "frame" construction and is relevant ........................................ 18

B.    The substantial differences in function-way-result between a separate frame and an integrated housing tub were undisputed ....................................................................... 19

C.    There was insufficient evidence that the separate frame was interchangeable with an integrated housing tub ............... 21

IV.    The District Court correctly construed "frame" as being a "distinct component separate from the remainder of the sign" .......... 22

A.    The specification clearly and unambiguously refers to "frame" as a separate component and repeatedly extolls the benefits of a separate and distinct frame ............................ 23

B.    Smartrend's proffered construction lacks support in the intrinsic record and lacks support in caselaw ......................... 27

C.    If the Court disagrees with the District Court's claim construction, the proper relief is reversal and remand .............. 29

CONCLUSION AND STATEMENT OF RELIEF SOUGHT ............................... 30

CERTIFICATE OF COMPLIANCE ....................................................................... 32

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Abbott Diabetes Care Inc.*,
  696 F.3d 1142 (Fed. Cir. 2012) .........................................................................24

*Apple, Inc. v. Samsung Elecs. Co., Ltd.*,
  2012 WL 2571332 (N.D. Cal. June 30, 2012)....................................................15

*Auto. Body Parts Ass'n v. Ford Glob. Techs., LLC*,
  930 F.3d 1314 (Fed. Cir. 2019) ...........................................................................3

*Berry v. City of Detroit*,
  25 F.3d 1342 (6th Cir.1994) .......................................................................10, 13

*Bowers v. Baystate Techs., Inc.*,
  320 F.3d 1317 (Fed. Cir. 2003) ....................................................................29, 30

*Bush Indus., Inc. v. O'Sullivan Indus., Inc.*,
  772 F. Supp. 1442 (D. Del. 1991)................................................................13, 15

*Cont'l Circuits LLC v. Intel Corp.*,
  915 F.3d 776 (Fed. Cir. 2019) ...........................................................................28

*Contessa Food Prod., Inc. v. Conagra, Inc.*,
  282 F.3d 1370 (Fed. Cir. 2002) .........................................................................11

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Company*,
  559 F.3d (Fed. Cir. 2009) ...........................................................................20, 21

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
  543 F.3d 665 (Fed. Cir. 2008) ........................................................................2, 11

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
  796 F.3d 1312 (Fed. Cir. 2015) ....................................................................13, 16

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
  274 F.3d 1371 (Fed. Cir. 2001) .........................................................................18

Page(s)

*Kitsch LLC v. Deejayzoo, LLC*,
   2023 WL 4291445 (C.D. Cal. May 8, 2023.) .................................................14, 15

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) .................................................................2

*MobileMedia Ideas LLC v. Apple Inc.*,
   780 F.3d 1159 (Fed. Cir. 2015) ..........................................................22

*Nelson v. Tenn. Gas Pipeline Co.*,
   243 F.3d 244 (6th Cir. 2001) ..............................................................12

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) ........................................................6, 7

*Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*,
   739 F.3d 694 (Fed. Cir. 2014) ..............................................................1

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) .......................................2, 3, 4, 5, 23

*Poly-Am., L.P. v. API Indus., Inc.*,
   839 F.3d 1131 (Fed. Cir. 2016) ....................................................28, 29

*SightSound Technologies, LLC v. Apple, Inc.*,
   809 F.3d 1307 (Fed. Cir. 2015) ..........................................................23

*SmithKline Beecham Corp. v. Apotex Corp.*,
   439 F.3d 1312 (Fed. Cir. 2006) ..........................................................10

*Stockman v. Oakcrest Dental Ctr., P.C.*,
   480 F.3d 791 (6th Cir. 2007) ..............................................................16

*Techtronic Indus. Co. v. Int'l Trade Comm'n*,
   944 F.3d 901 (Fed. Cir. 2019) ............................................................24

*United States v. Hemphill*,
   76 F. App'x 6 (6th Cir. 2003) ..............................................................9

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ........................................................4, 5

Page(s)

**Other Authorities**

Fed. R. Evid. 103 ...................................................................................9

MPEP § 1503.02 ....................................................................................2

## INTRODUCTION

The error here is straightforward: the District Court improperly permitted Smartrend's expert to (1) negate the express definition of "transparency" in the specification, (2) opine without any foundation on the ordinary observer, and (3) defy his admissions of substantial differences with self-contradictory conclusions of equivalency. Essentially, the Court permitted Smartrend's expert to override the patents, the rules of evidence, and the facts with bald assertions. In its scattershot response, Smartrend spends more time beating around these issues than addressing them. And when it does address the merits, the weakness of its arguments only reinforces how unsupportable the District Court's decision really is, as demonstrated below.

## ARGUMENT

**I.     The oblique shading lines are the claim, which the specification expressly defines as "denot[ing] transparency"; that definition is dispositive and not subject to construction.**

Smartrend's and the District Court's attempt to construe the D930 Patent's specification instead of its claim is misguided. "In determining the scope of the claimed design, it is the drawings of the design patent that provide the description of the invention." *Pac. Coast Marine Windshields Ltd. v. Malibu Boats, LLC*, 739 F.3d 694, 702 (Fed. Cir. 2014) (cleaned up). Figure 1 is the claim. The question

before the Court is what do the oblique shading lines mean to the ordinary artisan in the context of this design patent? *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005). The oblique shading lines in Figure 1 are a common patent convention meaning one of three things: transparency, translucency, and highly polished or reflective surfaces. MPEP § 1503.02.[1] Those meanings in the context of a design patent are not technical. They are ornamental, with a widely accepted meaning. The specification expressly and unambiguously states which of those three distinct meanings the oblique shading lines have: transparency.

### A. The District Court's construction errs as a matter of law in relying on irrelevant extrinsic evidence to construe the specification, rather than the claim.

Smartrend argues that the Court should defer to the District Court's construction of the word "transparency" based on extrinsic evidence because there is no intrinsic evidence about what transparency means to one skilled in the art. This approach is wrong for two reasons. First, even when enlightened by extrinsic evidence, claim construction is "still based upon the patent and prosecution history" as such "is a matter of law subject to de novo review." *Markman v.*

---

[1] "[A] trial court can usefully guide the finder of fact by addressing a number of other issues that bear on the scope of the claim." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 680 (Fed. Cir. 2008). "Those include such matters as describing the role of particular conventions in design patent drafting, such as the role of broken lines, see 37 C.F.R. 1.152." *Id.* (cleaned up).

*Westview Instruments, Inc.*, 52 F.3d 967, 981 (Fed. Cir. 1995) (en banc), *aff'd*, 517

U.S. 370 (1996). Second, the task is to construe the *claim*, not the specification.

The term "transparency" here is in the specification, which means it *is* the intrinsic

evidence of what the claim means. And contrary to what Smartrend argues, no

extrinsic evidence is needed to understand it.

Moreover, Smartrend offered no relevant extrinsic evidence on the meaning

of "transparency" in ornamental design. Smartrend's expert simply argued that

transparency and translucency were *functionally* the same. (Appx0527-0529.) That

analysis is simply not helpful in construing a design patent, which is concerned

with ornamental appearance, not function. *Auto. Body Parts Ass'n v. Ford Glob.*

*Techs., LLC*, 930 F.3d 1314, 1318 (Fed. Cir. 2019) ("a design patent must claim an

ornamental design, not one dictated by function."). Even Mr. York ultimately

acknowledged an ornamental difference between transparency and translucency.

(Smartrend's Br. 30; Appx0528.)

Finally, even if his opinion on function interchangeability were relevant, "a

court should discount any expert testimony 'that is clearly at odds with the claim

construction mandated by the claims themselves, the written description, and the

prosecution history, in other words, with the written record of the patent.' "

*Phillips*, 415 F.3d at 1318 (quoting *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d

709, 716 (Fed. Cir. 1998). Smartrend and the District Court have essentially

elevated the extrinsic evidence over the intrinsic evidence, contrary to this Court's

longstanding policy, summarized in *Phillips*:

> We have viewed extrinsic evidence in general as less
> reliable than the patent and its prosecution history in
> determining how to read claim terms, for several reasons.
> First, extrinsic evidence by definition is not part of the
> patent and does not have the specification's virtue of
> being created at the time of patent prosecution for the
> purpose of explaining the patent's scope and meaning.
> Second, while claims are construed as they would be
> understood by a hypothetical person of skill in the art,
> extrinsic publications may not be written by or for skilled
> artisans and therefore may not reflect the understanding
> of a skilled artisan in the field of the patent. Third,
> extrinsic evidence consisting of expert reports and
> testimony is generated at the time of and for the purpose
> of litigation and thus can suffer from bias that is not
> present in intrinsic evidence. The effect of that bias can
> be exacerbated if the expert is not one of skill in the
> relevant art or if the expert's opinion is offered in a form
> that is not subject to cross-examination. [415 F.3d at
> 1318.]

Accordingly, when "an analysis of the intrinsic evidence alone will resolve any

ambiguity in a disputed claim term. . . . it is improper to rely on extrinsic

evidence." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir.

1996). The reason for this is quite eloquently stated in *Vitronics*:

> The claims, specification, and file history, rather than
> extrinsic evidence, constitute the public record of the
> patentee's claim, a record on which the public is entitled
> to rely. In other words, competitors are entitled to review
> the public record, apply the established rules of claim
> construction, ascertain the scope of the patentee's
> claimed invention and, thus, design around the claimed

> invention. Allowing the public record to be altered or
> changed by extrinsic evidence introduced at trial, such as
> expert testimony, would make this right meaningless.
> [*Id*.]

Allowing Smartrend to use extrinsic evidence to expand the scope of its claim to include translucent surfaces deprives the public, and Opti-Luxx in particular, of its right to rely on the description given in the patent. "As the Supreme Court has stated, '[i]t seems to us that nothing can be more just and fair, both to the patentee and the public, than that the former should understand, and correctly describe, just what he has invented, and for what he claims a patent.' " *Phillips* 415 F.3d at 1321 (quoting *Merrill v. Yeomans,* 94 U.S. 568, 573–74 (1876)).

## B.    The lack of internal structures in the claim is meaningless and cannot override the express definition in the specification of "transparency."

To salvage its position, Smartrend argues that the lack of any depiction of internal structures shows the surface was not meant to be transparent. As its only authority for this proposition, Smartrend points to the USPTO Design Patent Application Guide, which notes that "elements visible behind transparent surfaces should be shown in light, full lines, not broken lines." (Appx0528.) This extrinsic evidence (which apparently is not in the record) obviously does not require Smartrend to claim the internal structures as elements of its design; it can claim whatever elements it wishes to claim as part of its claimed design. Nor does it

mean that any ambiguity in the drawing cannot be resolved through the

description, exactly the way Smartrend did here. To hold otherwise would

contravene the Court's precedents set forth above.

### C. Opti-Luxx preserved its proposed claim construction and is entitled to argue in support of that construction and against Smartrend's construction.

Finally, Smartrend contends that Opti-Luxx waived its arguments above, but

it did not. Since the summary judgment stage, Opti-Luxx has consistently argued

the same claim construction, based on the same intrinsic definition, and opposed

Smartrend's use of extrinsic evidence. (E.g. *see* Opti-Luxx's Summ. J. Br.,

Appx0234-0235.) Opti-Luxx's construction has not changed on appeal, nor has its

opposition to the District Court's construction. No new arguments are being made

in support of its construction on appeal. (Opti-Luxx's Br. 24-29.) At most,

additional points have been articulated on appeal to show the lack of merit in the

District Court's decision based on the record before that Court. "[A] waiver will

not necessarily occur . . . if a party simply presented new or additional arguments

in support of the scope of its claim construction on appeal." *O2 Micro Int'l Ltd. v.

Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1359–60 (Fed. Cir. 2008) (cleaned

up). It is perfectly acceptable for appellants to employ different arguments on

appeal in support of their position taken below to "simply incorporate an

understanding of the parties' dispute that has developed through the course of

litigation." *Id*. at 1360. Opti-Luxx's arguments are entirely appropriate given they advance the same construction proposed below in a *de novo* review.

* * *

In sum, the claim is the only thing to be construed, and the description was dispositive of that construction. Smartrend's reliance on irrelevant extrinsic evidence to construe the description itself is improper, and the District Court erred in adopting that construction. A new trial is in order, using the proper claim construction.

## II.    The District Court erred in admitting testimony on the ordinary observer without foundation, and that error is preserved.

When the District Court overruled Opti-Luxx's objection prior to Mr. York opining that bus sign purchasers would find the accused device confusingly similar, it did so *only* because it believed Mr. York was qualified to do so as an expert in LED and illuminated signage. Timeliness was not given as a reason. As explained in the principal brief, this was an error of law, and the error was prejudicial. Smartrend does not even attempt to support the District Court's reasoning. It instead tries to immunize this error from appellate review by claiming waiver, asserting post hoc rationalizations lacking record support, and arguing harmless error. These arguments are unpersuasive.

**A.**  **Opti-Luxx preserved the only issue that matters in its appeal of the District Court's evidentiary ruling—whether a POSITA is inherently an ordinary observer.**

Smartrend first argues the plain error standard applies for failure to timely object to Mr. York's admission as an expert in LED and illuminated signage, and further argues that Opti-Luxx has waived any argument to the contrary on appeal by not addressing later rulings denying a directed verdict and judgment as a matter of law. Smartrend's arguments fail because those rulings do not address Opti-Luxx's objection at trial and are not at issue in this appeal.

Smartrend at trial asked that "Mr. York be recognized as an expert witness having knowledge regarding LED lighting and illuminated signage." (Appx1697.) When Mr. York was then later asked to opine on "the D930 in view of the Opti-Luxx products," Opti-Luxx's counsel timely objected for lack of foundation. (Appx1726-1727.) In overruling Opti-Luxx's objection, the District Court gave one reason:

> He was admitted as an expert in LED lighting and illuminated signage, and he's giving his opinion. He doesn't have to be the ordinary observer to give the opinion. So overruled. [Appx1728.]

It is this decision that Opti-Luxx appeals, and its principal brief addresses that singular rationale, that a recognized expert in LED lighting and illuminated signage may testify about bus sign purchasers without laying any further foundation. (Opti-Luxx's Br. 30-32.)

8

It is axiomatic that an objection to testimony based on lack of foundation is timely when it is made prior to the testimony being introduced. *See United States v. Hemphill*, 76 F. App'x 6, 10 (6th Cir. 2003) (holding "counsel made a timely objection prior to the introduction of the officers' testimony."). Smartrend cites no authority to the contrary.

Instead, Smartrend contends Opti-Luxx cannot rebut this because it did not allege error in later decisions denying a directed verdict (Appx1922-1924) and judgment as a matter of law (Appx0009-0010). "Once the court makes a definitive ruling on the record admitting or excluding evidence, *either at or before trial,* a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Fed. R. Evid. 103(a) (emphasis added). Opti-Luxx is entitled to assert error in that game-time decision at trial, regardless of the District Court's reasons for denying a different request for relief that Opti-Luxx made later by motion.

Moreover, those later rulings do not address the timeliness of Opti-Luxx's earlier objection. The Court instead construed Opti-Luxx's later arguments as against Mr. York's admission as an expert. (Appx1901 ("Well, the time to do that was at the time before he was qualified.  He's already been qualified as an expert."); Appx0009 ("[I]f OLI wished to challenge York's qualifications to testify as to certain aspects of the legal test, it should have done so prior to his admission. But OLI did not challenge York's admission."). Opti-Luxx's objection prior to Mr.

York testifying was not to his admission, it was objecting to his testimony as going beyond his admitted expertise. (Opti-Luxx's Br. 32.) "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question." *See Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir.1994). Consequently, the District Court's later rationales are inapplicable. (*See* Appx0009-0010; Appx1901.)

Finally, Smartrend fails to supply any explanation or authority for how these rationales for denying later motions making different requests for relief somehow apply *nunc pro tunc* to its earlier overruling of Opti-Luxx's objection. Consequently, Smartrend has waived this waiver argument. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (quoting with approval *Anderson v. City of Boston*, 375 F.3d 71, 91 (1st Cir. 2004) ("When a party includes no developed argumentation on a point . . . we treat the argument as waived under our well established rule.")).

## B.    Smartrend points to no foundation for Mr. York's testimony on the perspective of a bus sign purchaser.

Smartrend does not dispute the premise that qualifying an expert as a POSITA does not inherently lay a foundation for that same expert's testimony on the perspective of an ordinary observer.  It instead tries to support Mr. York's

testimony with conclusory assertions that this foundation was laid. None of the record evidence it points to supports that position.

Smartrend first cites Appx1681-1697 for the proposition that Mr. York "detailed his substantial credentials in the design, development and marketing of illuminated signage in the transportation industry." (Smartrend's Br. 34.) Nowhere in those pages does Mr. York come even close to saying anything about having experience with signage on transportation vehicles (or any vehicles), much less school buses, and not even marketing of illuminated signage. At most, it all goes to his experience as an expert designer of illuminated signage, which is not sufficient. *See Contessa Food Prod., Inc. v. Conagra, Inc*., 282 F.3d 1370, 1381–82 (Fed. Cir. 2002) (overruled on other grounds by *Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665 (Fed. Cir. 2008). "Analysis under the 'ordinary observer' test is to be conducted with the "ordinary observer" and not the expert designer in mind." *Id*.

Smartrend then cites Appx1703-1712, but there Mr. York is testifying from the perspective of a design patent drafter and explaining the design patent. He had laid a foundation for this prior to his admission by testifying to his experience with design patents. (Appx1696-1697.) This testimony does not show he knows anything about purchasers of bus signs.

Smartrend also cites Appx1721-1730, but there Mr. York testified about the utility patent, with some discussion of his experience with corporate identity

11

signage, until Appx1724, where he again returns to discussing design patents, the ordinary observer test, and who the ordinary observer is, just before Opti-Luxx objects to the forthcoming opinion on the ordinary observer's perspective at Appx1727. The testimony that follows at Appx1728-1730 when the objection is overruled likewise does not show Mr. York has the personal knowledge or experience with purchasers of bus signs.

Smartrend contends that Opti-Luxx "chose not to challenge any purported deficiencies in his qualifications relating to an 'ordinary observer' before he was admitted as an expert." (Smartrend's Br. 35.) Opti-Luxx did not have to because Smartrend never offered Mr. York at trial as an ordinary observer or as one qualified to testify on that issue. (Appx1697). It was Smartrend's burden to lay that foundation in the first instance. *See Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) ("[I]t is the proponent of the testimony bears the burden of establishing its admissibility by a preponderance of proof.").

## C. Opti-Luxx's objection went to lack of foundation for Mr. York to opine on the ordinary observer.

Smartrend makes a sematic argument that Opti-Luxx objected to Mr. York's "qualifications, not foundation." (Smartrend's Br. 36.) Smartrend's brief omits part of the relevant context, however, by truncating the objection. Opti-Luxx's counsel asserted, "there's been no testimony that this witness is qualified to testify *what would, in fact, lead the ordinary observer to be deceived*, because I don't believe --

there's been any testimony this witness is an ordinary observer." (Appx1727 (emphasis added to omitted portion).) The issue is not Mr. York's qualifications to testify as an LED and illuminated signage expert, but whether a foundation was laid showing Mr. York was qualified to opine on the perspective of an ordinary observer. *See Berry*, 25 F.3d at 1351. There was none.

As explained before, qualifying an expert as a POSITA is not the same as qualifying that witness as an ordinary observer. (Opti-Luxx's Br. 30-34.) Opti-Luxx's objection rested on the fundamental idea that "the ordinary observer is not an expert in the claimed designs, but one of ordinary acuteness who is a principal purchaser of the underlying articles with the claimed designs." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1337 (Fed. Cir. 2015); *See Bush Indus., Inc. v. O'Sullivan Indus., Inc.*, 772 F. Supp. 1442, (D. Del. 1991) (finding plaintiff's expert testimony unhelpful because his affidavit was based on his opinion of what an ordinary observer would notice and not on personal knowledge of consumers' perceptions, when the expert had never been to a showroom in which the patented and accused models were displayed, and he had not conducted any surveys or even spoken to any customers). Smartrend has not pointed to where a proper foundation was laid in the record for Mr. York to opine as to the perspective of a bus sign purchaser, the ordinary observer in this case.

Smartrend argues the objection is limited to Mr. York not being an ordinary observer, but the gist of the objection is that "testimony" was lacking to show Mr. York had the requisite knowledge or expertise to say "what would, in fact, lead the ordinary observer to be deceived." (Appx1727.) Mr. York being an ordinary observer would have been one way to lay that foundation among many. But ultimately, it was Smartrend's burden to lay a proper foundation in one way or another, not Opti-Luxx's burden to enumerate all the ways in which Smartrend failed to do so.

### D.    Smartrend's citations to unpublished decisions from district courts are unavailing.

Smartrend boasts that ample authority supports the District Court's finding that Mr. York did not have to be an ordinary observer or conduct a survey to testify from the perspective of an ordinary observer. This may be true, but only where a foundation is laid in some other way to establish that the expert has personal knowledge about what an ordinary observer would perceive. No such foundation was laid here.

The "ample authority" that Smartrend cites—which consists of two unpublished cases—illustrates this point exactly. In *Kitsch LLC v. Deejayzoo, LLC*, defendant sought to exclude plaintiff's  expert, a design teacher, whose position required an understanding of consumers and their reaction to and understanding of design, from opining through the lens of the hypothetical, ordinary observer. 2023

WL 4291445, at *8 (C.D. Cal. May 8, 2023.) In denying defendant's motion, the

court held that defendant's testimony was based *inter alia* on his understanding of

the typical purchaser. *Id.*

Similarly, in *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, Apple sought to

exclude Mr. Sherman's expert testimony on the grounds that: (1) Mr. Sherman was

unqualified on the perspective of persons having ordinary skill in the art; (2) Mr.

Sherman was unqualified on the perspective of ordinary observers. 2012 WL

2571332, at *2 (N.D. Cal. June 30, 2012). Opti-Luxx finds the court's differing

rational for denying both motions particularly instructive. *Id.* The Court found Mr.

Sherman qualified to opine on the perspective of a person having ordinary skill in

the art of design of electronic displays based on his experience as a manager

overseeing product development in the mobile device industry, which the Court

noted would help the jury reach findings on obviousness. In the context of

infringement however, the Court found Mr. Sherman qualified to opine on the

perspective of an ordinary observer based on his experience with consumer

reaction to mobile devices. *Id.*

In both cases, the expert's foundational experience or knowledge regarding

the pertinent consumer's reaction to the subject matter of the patent formed the

basis for the Court's decision not to exclude the expert's testimony as to the

ordinary observer. *See also Bush Indus., Inc.*, 772 F. Supp. at 1450 (finding

Defendants' expert's testimony unnecessary because while he had attempted to

provide the viewpoint of an ordinary observer, his affidavit was not based on

personal knowledge of consumers' perceptions.)

That was not the basis of the District Court's decision here, as no such

foundation was laid here. The District Court's decision was instead based solely on

Mr. York's qualifications as an expert in LED and illuminated signage, which has

no meaningful connection to the perspective of bus sign purchaser. *See Ethicon*,

796 F.3d at 1337.

### E. The District Court's error in allowing an expert to testify on the perspective of an ordinary observer without any foundation was not harmless.

Smartrend also claims that any alleged error in admitting Mr. York's

testimony was harmless because there was testimony at trial that bus dealers were

deceived by the Opti-Luxx products into believing these signs were the patented

design. (Smartrend's Br. 37.) Whether there is other evidence sufficient to support

the jury's decision is not the test for harmless error. Instead, a court must "examine

the entire record to see if the alleged error *tended* to prejudice the party." *Stockman

v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 799 (6th Cir. 2007) (citations omitted,

emphasis added).

It is apparent from the record that Mr. York's testimony was the centerpiece

of Smartrend's case for infringement of the D930 patent. Mr. York testified at

length on the subject. (Appx1727-1730, Appx1766-1808, Appx1810-1814.)

Absent some reason to believe otherwise, it should be presumed that experts—especially when they are unrebutted—have an outsized influence on a jury's decision, being recognized authorities on the subject matter they testify about. That would be especially true here where the expert directly answering the ultimate question the jury is tasked with answering.

In contrast, the anecdotal evidence of confusion by other bus dealers presented by Smartrend's founder and president Kevin Smith (Appx1518) was quick and circumstantial and required the jury to gratuitously infer the signs seen by other bus dealers were Opti-Luxx's, without any direct evidence of that (Appx1575-1578). Smith's testimony also came tainted with obvious bias toward Smartrend prevailing in the case, given his position at Smartrend.

Under the circumstances, Mr. York's testimony at the very least "tended" to prejudice Opti-Luxx. The District Court's admission of Mr. York's testimony on the ordinary observer was therefore not harmless.

## III. The '491 Patent's and expert York's admissions that a separate frame has advantages over an integral frame are undisputed, dispositive, and require reversal of the judgment.

The '491 Patent is a different claim and different story at trial, but turns on testimony from the same expert.  As an expert in LED and illuminated signage, Mr. York was admittedly qualified to testify as a person of ordinary skill in the art

("POSITA"). But his particularized testimony demolished Smartrend's case for equivalency, when he admitted there were numerous substantial advantages to the separate and distinct frame as compared to the accused product's integral housing tub. Smartrend finds itself unable to dispute this, so it instead pursues strategies to avoid the issue: (1) arguing Opti-Luxx's argument uses the wrong claim construction and is irrelevant, and (2) arguing the jury and the District Court had discretion to ignore Mr. York's admissions. Neither argument withstands scrutiny.

## A.     Opti-Luxx's argument applies the District Court's "frame" construction and is relevant.

Smartrend contends that "neither the claims nor district court's construction require 'a frame separate from the [entire] sign' nor a 'separable' frame," as Opti-Luxx argues. (Smartrend's Br. 41.) But the District Court specifically referred to the "remainder of the sign" sometimes as just "the sign." (E.g., Appx0076 ["But the sign is, as explained throughout the patent, 'self-contained' and separate from the mounting frame."]; *see also* Appx0074, Appx0077.) And so did Smartrend's own description of its patented device—*repeatedly*. (E.g., '491 Patent, Col. 11:11-67, Appx5605 (emphasis added).) Smartrend's refusal to squarely address Opti-Luxx's argument—which uses Smartrend's own words—is telling.

Smartrend also contends that Opti-Luxx is impermissibly importing a limitation of "separability" into claim 1. In support of this argument, Smartrend cites *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1382 (Fed.

Cir. 2001), to suggest that a function must be expressly claimed to be considered in the function-way-results test. *Interactive* says no such thing. *Interactive* involved a means-plus-function limitation, so naturally there were functions recited in the claim. *Interactive* does not also imply that traditional claim limitations must also recite a function in order for that function to be evaluated under the function-way-results test.

The salient truth is that the '491 Patent and Mr. York admit to numerous advantages of a mounting frame that is "separate and distinct" from the remainder of the sign—advantages that are not achieved with Opti-Luxx's integral housing tub—including manufacturing benefits, logistical benefits, shipping benefits, customization benefits, anti-corrosion benefits, and so on.  (See '491 Patent, Col. 11:11-67, Appx5605; York Tr. Testimony, Appx1822-1836.) There can be no finding of equivalency as a matter of law when it is undisputed that the "separate and distinct frame" results in substantial differences from an integral frame that are touted by Smartrend as being superior.

## B.    The substantial differences in function-way-result between a separate frame and an integrated housing tub were undisputed.

As detailed in Opti-Luxx's principal brief, there is no issue of fact for a jury to resolve about the way in which the separate frame claimed in the '491 Patent functioned, the resulting advantages, or that these were substantial differences

from the accused product's integrated housing tub. It was written all over

Smartrend's patent and admitted by its expert at trial. Smartrend nevertheless

argues that "determining the claimed function for a structural claim limitation...is a

question of fact for the jury" and that an element of an accused device does not

need to offer every functional benefit of a claimed structure to be deemed

equivalent. (Smartrend's Br. 43.) Smartrend cites one case in support, *Crown

Packaging Tech., Inc. v. Rexam Beverage Can Company*, 559 F.3d 1308 (Fed. Cir.

2009), but that case is unavailing.

In *Crown Packaging*, the parties disputed only one issue—whether there was

a material issue of fact regarding the function(s) of the claimed element in the

plaintiff's utility patent. 559 F.3d at 1314. The plaintiff's expert opined that the

defendant's product infringed the patent under the doctrine of equivalents after

performing a detailed analysis under the function-way-result test wherein he

opined in relevant part, that the claimed element of the patent performed the same

function as a feature of the accused product. *Id.* The defendant argued that the

claimed element had two additional functions, notwithstanding the fact that the

defendant's expert did not discuss these two additional functions. *Id*. at 1314-15.

This Court resolved the issue in favor of the plaintiff, the non-moving party,

concluding that there was a material issue of fact regarding the function of the

claimed element because the plaintiff's expert concluded that the claimed element

performed only one function, in direct contrast with the defendant's view that the claimed element performed multiple functions. *Id.*, at 1315.

Unlike the facts in *Crown Packaging*, the numerous functions of the separate frame claimed in the '491 Patent are articulated in the '491 Patent itself and acknowledged in the District Court's construction of the term "frame." Then Smartrend's own expert testified at trial as to the many ways in which a separate and distinct frame functioned differently from an integral frame by facilitating a change out of the signs or transfer of the sign to another bus, assembly in different stages, a frame out of metal, replacement of a damaged sign, etc. (Appx1822-1836.) Mr. York also admitted that this difference impacts the end user, noting that the accused product does not allow the purchaser the "use of a separate mounting frame," as claimed in the '491 Patent, which—unlike the Opti-Luxx product—allows "an installation ready sign product that can be used on an on-demand basis, particularly where the individual signs and mounting frames have been prefabricated to reduce lead time." (Appx1832.) On those undisputed facts alone, the integrated tub housing cannot be equivalent to the separate and distinct frame claimed in the '491 Patent as a matter of law.

### C.    There was insufficient evidence that the separate frame was interchangeable with an integrated housing tub.

Finally, Smartrend contends that it has satisfied the doctrine of equivalents under the substantial differences test, because the integrated housing tub is

interchangeable with the separate frame claimed in the '491 patent and thus

represents an insubstantial change. (Smartrend's Br. 39-40.) But the only support it

offers are Mr. York's conclusory statements, which contradict his particular

admissions. Furthermore, Mr. York's testimony that "there's a wide variety of

ways of doing things" only undermines Smartrend's argument that it has satisfied

the function-way-results analysis. (Smartrend's Br. 40.)  Finally, Mr. York's

testimony that the Opti-Luxx frame whether created as a single piece or separate,

does everything the same way, simply ignores Mr. York's testimony on the

advantages of the separate frame. Other than Mr. York's conclusory assertions,

Smartrend offers no additional testimony to support any argument that the

integrated tub housing is an insubstantial change from the '491 Patent's separate

frame. Mr. York's conclusory assertions are simply insufficient to support the

jury's verdict. *See MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1172

(Fed. Cir. 2015) ("[c]onclusory statements by an expert, however, are insufficient

to sustain a jury's verdict.")

## IV.    The District Court correctly construed "frame" as being a "distinct component separate from the remainder of the sign."

The District Court construed "frame" as recited in claim 1 of the '491 Patent

as having its plain and ordinary meaning (Appx0071-0072) and also as "a distinct

component separate from the remainder of the sign." (Appx0082.)  In challenging

this construction, Smartrend does not dispute that the term "frame" should receive

22

its plain and ordinary meaning or that the term "frame" encompasses objects that are "a distinct component separate from" the claimed panel.  (Smartrend's Br. 43–44.)  Rather, Smartrend seeks to broaden claim 1 by construing "frame" as also including an "integral" component of the claimed panel.  (Smartrend's Br. 49.)

In particular, Smartrend alleges that the District Court erred in finding "disclaimer by implication." (Smartrend's Br. 46.) This argument misses the mark in at least two ways. First, it ignores the specification's repeated reference to a frame as a distinct component, separate from the remainder of the sign. Second, Smartrend's own construction is devoid of support in the intrinsic record.

But in the unlikely event the Court were to reverse the District Court's construction, that would not supply an alternative ground for affirmance, as Smartrend argues. Instead, the only appropriate relief would be reversal and remand for further factual development and trial under the correct construction.

## A.    The specification clearly and unambiguously refers to "frame" as a separate component and repeatedly extolls the benefits of a separate and distinct frame.

The specification is the "single best guide to the meaning of a disputed term and . . . acts as a dictionary . . . when it defines terms by implication." *See, e.g.*, *SightSound Technologies, LLC v. Apple, Inc.*, 809 F.3d 1307, 1317 (Fed. Cir. 2015). In some instances, "the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor." *Phillips*, 415 F.3d at 1316.  "A

disavowal must be clear, but it need not be explicit." *Techtronic Indus. Co. v. Int'l Trade Comm'n*, 944 F.3d 901, 907 (Fed. Cir. 2019) (citing *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016)). *In re Abbott Diabetes Care Inc.*, 696 F.3d 1142, 1150 (Fed. Cir. 2012).

As set forth below, the District Court correctly construed the claim in light of the specification and reasoned that the claimed "frame" is "a distinct component separate from the remainder of the sign," but not an "integral" component of the remainder of the sign, or more specifically, the translucent panel.  (Appx0082.)

Turning first to the specification, the '491 Patent describes a "separate mounting frame mountable on a vehicle." ('491 Patent, Abstract, Appx5563.)  The specification describes the frame's purpose as follows: "to enable mounting of the sign to the shell of a vehicle, such as a school bus." (*Id.*, Col. 4:49-50, Appx5601.) To achieve this purpose, the "mounting frame is configured to removably receive the sign and, when the sign is received in the mounting frame, to surround a perimeter of the sign while permitting visibility of the front display area." (*Id.*, Abstract, Appx5563.)

One example of a mounting frame is depicted in Figure 4, reproduced below.  This mounting frame "has a two-piece construction," namely a front sub-frame and rear sub-frame.  (*Id.*, Col. 7:52-54, Appx5603.) The front sub-frame and the rear sub-frame cooperate to "form an internal space in which the frameless sign

10 is installed to enable indirect support of the sign 10 on the shell of a school bus by attachment of the mounting frame 50 thereto." (*Id.*, Col. 7:55-58, Appx5603.)



**FIG. 4**

The specification teaches that the above illustrated sign is "frameless" unless and until received within a separate mounting frame that is "assembled around the perimeter of the assembled panels." (*Id.*, Col. 7:43-45, Appx5603.) Attachment of the frame 50 to the bus is achieved with fasteners, illustrated above, or through "the use of a magnet, adhesive, bonding or solidifying material." (*Id.*, Col. 14:59-60, Appx5606.) For completeness, single-piece frames are described at Col. 14:65–67 and Col. 15:6–11.

The '491 Patent repeatedly extols the virtues of a frame that is separate from the remainder of the sign.  For example, "[s]ince the sign is mounted indirectly to the bus via the mounting frame, service or replacement of the sign can be performed without having to remove the entire installation." (*Id.*, Col. 11:11-13, Appx5605.) Also by example, "[u]se of a separate mounting frame may also allow an installation-ready sign product that can be used on an on-demand basis, particularly where the individual signs and mounting frames have been prefabricated to reduce lead time." (*Id.*, Col. 11:41-45, Appx5605.) "For example, at the manufacturer or distributor level, a customer-ready product is only assembled once the customer specifies the particular sign type required . . . at which point the manufacturer selects a sign of appropriate wording from among pre-fabricated signs, and combines it with a pre-fabricated mounting frame of compatible size and shape." (*Id.*)

Smartrend's own expert, Mr. York, echoed these sentiments.  In particular, Mr. York observed that a separate and distinct frame allows the end-user to more easily change out signs, transfer a sign to another bus, replace a damaged sign, while also allowing assembly in different stages.  (Appx1822-1836.) There is no evidence in the record to suggest these attributes are present in frames that are "integral" with the remainder of the sign.

26

## B.    Smartrend's proffered construction lacks support in the intrinsic record and lacks support in caselaw.

As set forth above, the District Court correctly determined that "the specification 'repeatedly, consistently, and exclusively' depicts a given invention as embodying only one of multiple potential interpretations of claim language." (Appx0078 (citing *In re Abbot Diabetes Care Inc.*, 696 F.3d 1142, 1150 (Fed. Cir. 2012)).  Despite this, Smartrend seeks to construe "frame" as also including frames that are integrally joined to the remainder of the sign.  After carefully considering this argument, the District Court observed that "[t]he 491 Patent goes on, never once indicating that the mounting frame is anything other than a separate, distinct component."  (Appx0075.)  Smartrend does not dispute this point, and indeed Smartrend has not pointed to a *single* excerpt in the specification of a frame that is "integral" with the remainder of the sign.  This is not surprising, as an "integral" frame would forfeit the above-touted benefits of a separate frame, namely (a) the ability to rapidly replace an existing sign from the vehicle, and (b) the ability to mix-and-match signs with mounting frames for assembly and distribution.

Smartrend also contends that this Court's precedent supports its construction, citing *Continental Circuits LLC v. Intel Corp.*, 915 F.3d 776 (Fed. Cir. 2019).  However, the facts underlying *Continental Circuits* are so dissimilar from the present facts as to be unhelpful.  In *Continental Circuits*, the patent specification described a process for manufacturing the claimed device using a

27

particular dielectric material. 915 F.3d at 797 ("Overall, those statements simply describe how to make the claimed invention using the preferred Probelec XB 7081 in a 'new' way that is different from the prior art process and are not statements clearly limiting the claimed 'electrical device' to require a repeated desmear process."). The court declined to construe the claims to require the particular dielectric material. In particular, the court appropriately observed that merely disclosing one embodiment, "without more," does not result in a clear disavowal of claim scope. *Id.* But as the District Court's claim construction opinion sets forth in detail, the instant specification does *substantially more* by repeatedly and consistently extolling the benefits of a frame that is a distinct component, separate from the sign.

Smartrend also cites *Poly-Am., L.P. v. API Industries, Inc.*, 839 F.3d 1131 (Fed. Cir. 2016). But *Poly-Am* supports the District Court's claim construction analysis. In *Poly-Am*, "[e]very embodiment described in the specification has [a feature] and every section of the specification indicates the importance of [the feature]." 839 F.3d at 1137. The same is true here. In particular, the instant specification repeatedly references a particular feature (a mounting frame that is separable from the remainder of the sign) and repeatedly reinforces the importance of this limitation. "These two facts provide together a proper reason to limit the

claims in this way." *Id.* Here, as in *Poly-Am*, the District Court correctly reasoned the specification limits "frame" to a separate and distinct component of the sign.

For the reasons set forth above, the District Court properly declined to construe "frame" as encompassing objects that are an "integral" component of the sign (or more specifically, the claimed translucent panel). As there is no dispute as to the remainder of the District Court's construction of "frame" in claim 1 of the '491 Patent, the District Court's judgment of no literal infringement of the '491 Patent should be affirmed.

### C. If the Court disagrees with the District Court's claim construction, the proper relief is reversal and remand.

Smartrend also contends that it is "entitled to a finding of literal infringement" based upon its construction of "frame." (Smartrend's Br. 51). However, a change in claim construction at the appellate level "generally necessitates a remand to the district court to consider new factual issues." *See, e.g.*, *Bowers v. Baystate Techs., Inc.*, 320 F.3d 1317, 1334 (Fed. Cir. 2003). These new factual issues pertain to, at a minimum, infringement and validity. Opti-Luxx was prepared to argue the invalidity of Smartrend's '491 Patent based on Smartrend's construction (Appx3229), but had no need to do so because the District Court did not adopt that construction. If this Court alters the construction to what Smartrend proposes, Opti-Luxx must be given a fair opportunity to challenge the validity of the '491 Patent under that construction, which was never presented to the jury.

It also bears emphasizing that Opti-Luxx did not "stipulate" to infringement under Smartrend's construction of the "frame" term, which is only one limitation of the Claim 1. *See Bowers*, 320 F.3d at 1334 ("To prove infringement, the patentee must show that the accused device contains each limitation of the asserted claim."). Instead, Opti-Luxx's trial counsel merely observed that, under Smartrend's construction, the terms at issue would be so broad as to encompass Opti-Luxx's device and other prior art, so as to make the '491 Patent invalid (Appx3229.) For the reasons discussed above, however, the District Court did not err in construing "frame" as recited in the '491 Patent, and therefore a remand to consider new factual issues is not required.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

For the foregoing reasons, Opti-Luxx Inc., respectfully requests that this Court grant the following relief: (1) vacate the judgment, permanent injunction, and award of costs with respect to Smartrend's D930 Patent infringement claim and remand the case for factual development and a new trial under the proper claim construction, and (2) reverse the judgment, permanent injunction, and award of costs, and remand for entry of judgment in Opti-Luxx's favor with respect to Smartrend's '491 Patent infringement claim.

Dated: August 26, 2024

*/s/ Gaëtan Gerville-Réache*

Gaëtan Gerville-Réache
Warner Norcross + Judd LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503-2832
Telephone: (616) 752-2207
E-mail: greache@wnj.com

Vito A. Ciaravino
Warner Norcross and Judd LLP
2715 Woodward Ave., Ste. 300
Detroit, MI 48201
Telephone: (313) 546-6179
Email: vciaravino@wnj.com

Attorneys for Defendant-Appellant

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation pursuant to Fed. R. App. P. 32(a)(7)(B)(ii). The foregoing brief contains 6,978 words of Times New Roman 14-point proportional type. The word processing software used to prepare this brief was Microsoft Word 365.

Dated: August 26, 2024                 */s/ Gaëtan Gerville-Réache*

Gaëtan Gerville-Réache
Warner Norcross + Judd LLP
150 Ottawa Avenue NW, Suite 1500
Grand Rapids, MI 49503-2832
Telephone: (616) 752-2207
E-mail: greache@wnj.com

Vito A. Ciaravino
Warner Norcross and Judd LLP
2715 Woodward Avenue, Suite 300
Detroit, MI 48201
Telephone: (313) 546-6179
E-mail: vciaravino@wnj.com

Attorneys for Defendant-Appellant

212775.212775 #30979592

32